A91A0273. ALLEN v. THE STATE.
(408 SE2d 127)

MCMURRAY, Presiding Judge.

Defendant was charged in a four-count indictment with violating Georgia's Controlled Substances Act, i.e., unlawfully possessing methamphetamine with intent to distribute (Count 1), unlawfully possessing cocaine (Count 2), unlawfully possessing lysergic acid diethylamide (Count 3) and unlawfully possessing alprazolam (Count 4). The case was tried before a jury and the evidence revealed the following:

On November 15, 1988, Detective Sergeant Steve Newton of the Duluth Police Department received information from a confidential informant that the controlled substance methamphetamine ("crank" or "speed") was being sold from the residence of Gary and Roxanne Cane. Newton verified this information by conducting a controlled purchase of drugs from the Cane residence. He later obtained a search warrant for the Cane house and "any outbuildings within the curtilage of [the Cane] property."

About 8:00 p.m. on November 15, 1988, a team of law enforcement officers arrived at the Cane property and moved into position to execute the search warrant. Defendant was then observed walking from a smaller house at the rear of the Cane property which was not subject to the search. The officers watched defendant enter the Cane house and the search team then "forcibly opened [the Cane's front door] and . . . yelled, 'police, search warrant[.' Defendant] came charging out the sliding glass doors in a dead run . . .," but he was immediately apprehended and taken to a room in the Cane residence "and placed . . . with . . . others that had been detained. . . ."

In the meantime, Newton confirmed that the small house was "subleased" and discovered that defendant resided in the house. Du-

luth Police Sergeant John Steffel also discovered that defendant had been staying in the small house and he "asked the defendant, would you mind if we check the house to make sure there is nobody there that is going to come out and do us harm, we need to check the house for people. And [defendant] said, 'sure, go ahead.'"

Steffel and Duluth Police Officer Don Newell, Jr., approached the small house, knocked on the door and identified themselves. The officers then entered the house, but Steffel stopped his advance because he "heard footsteps running across toward the other end of the house. . . ." Newell continued to "sweep through the house . . ." and he noticed "this real ugly smell . . ." and laboratory equipment and what appeared to be illegal drugs. (Two suspects fled from the house during the search, but they were apprehended by officers stationed outside the small house and opposite the door of Newell's entry.)

The officers later returned to the small house with a search warrant and discovered laboratory equipment, cash used by Newton's informant to purchase methamphetamine from the Cane residence and controlled substances described in Counts 1 through 4 of the indictment. The jury found defendant guilty on all counts of the indictment. This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant contends the trial court erred in denying his motion to suppress and in overruling his objections to evidence seized during the search of his residence, arguing that the initial warrantless search "exceeded the scope of [his] permission to check the house for other persons" and that his "limited consent" was not freely and voluntarily given because of the misleading and coercive circumstances of his detention.

"Where the state seeks to justify a warrantless search on grounds of consent, it 'has the burden of proving that the consent was, in fact, freely and voluntarily given.' Bumper v. North Carolina, 391 U. S. 543, 548 (88 SC 1788, 20 LE2d 797) (1968). A valid consent eliminates the need for either probable cause or a search warrant. *Hall v. State*, 239 Ga. 832 (238 SE2d 912) (1977). The voluntariness of a consent to search is determined by looking to the 'totality of the circumstances,' Schneckloth v. Bustamonte, 412 U. S. 218, 229 (93 SC 2041, 36 LE2d 854) (1973), including such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling. Id. at 226." *Dean v. State*, 250 Ga. 77, 79 (2a) (295 SE2d 306).

In the case sub judice, Steffel testified at a motion to suppress hearing that he approached defendant "less than five minutes" after

defendant had been detained; that defendant was then "handcuffed" and "on the floor in the den [of the Cane house]" and that he informed defendant that the officers were "executing a search warrant. . . ." Steffel also testified that defendant was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694); that defendant indicated an understanding of his constitutional rights; that defendant did not appear to be intimidated; that defendant was not threatened or coerced and that defendant "reflected the image . . . that he didn't care, that he was in a bind and [that] it didn't really matter what he said or not. . . ."

"Whether there is a valid consent to search is a matter exclusively within the province of the factfinder, the trial court. 'Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal.' *Dean v. State*, 250 Ga. App. 77, 80[, supra]." *Bryan v. State*, 197 Ga. App. 207 (398 SE2d 230). The evidence in the case sub judice authorized the trial court's finding that defendant's consent was free and voluntary and that the law enforcement officers did not exceed the scope of defendant's consent. The trial court did not abuse its discretion in denying defendant's motion to suppress and in allowing evidence of the illegal drugs seized during the search of defendant's home.

2. Defendant challenges the denial of his motion for directed verdict of acquittal and contends the evidence was insufficient to support his convictions under Counts 1, 2 and 3 of the indictment, arguing that others had "equal access" to the areas where the illegal drugs were found.

" '[I]f there is additional evidence of possession of contraband by the accused — either circumstantial or direct, other than mere ownership, use or possession of the (premises where it is found), then an issue is made for the jury. . . .' *Fears v. State*, 169 Ga. App. 172, 174 (312 SE2d 174) (1983)." *Black v. State*, 181 Ga. App. 540 (353 SE2d 4). In the case sub judice, the evidence not only shows that defendant was in possession and control of the premises where the illegal drugs were found, it shows that defendant fled from the law enforcement search team when they entered the Cane residence and that currency used by a law enforcement officer to purchase methamphetamine was discovered in the small house. This evidence and evidence that illegal drug activities were plainly detectible upon a "sweep through" of the small house was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of the crimes charged in Counts 1, 2, and 3 of the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Sognier, C. J., and Andrews, J., concur.*

DECIDED JUNE 20, 1991 —
RECONSIDERATION DENIED JULY 5, 1991 — 

Drug violation. Gwinnett Superior Court. Before Judge Huff.
*Ralph J. Hunstein*, for appellant.
*Thomas C. Lawler III, District Attorney, David K. Keeton, Debra K. Turner, Assistant District Attorneys*, for appellee.