A95A0687. HUCKEBA v. THE STATE.
(458 SE2d 131)

ANDREWS, Judge.

Huckeba was convicted of aggravated assault with intent to rape and of false imprisonment and appeals.

Viewing the evidence in the light most favorable to the verdict, it was that the victim was a foreign exchange student who had lived with Huckeba and his wife for two-and-one-half years. At about 6:20 a.m. on February 27, 1992, the victim, who had been asleep in her bedroom, was lying in her bed waiting to arise. She heard a noise and looked up to see Huckeba wearing a ski mask with eye and mouth holes cut out. Huckeba maced the victim, hurting her eyes and burning her throat and nose.

Huckeba covered the victim's face with the bed sheets and turned on the lights and, after struggling out from under the sheets, she was able to see him. Huckeba placed his hands over her nose and mouth and tied her hands behind her back, causing visible rope burns. He then straddled her.

The victim shouted for Huckeba's wife. She then called out Huckeba's name. He continued the assault and tried to tie her legs together with a bathrobe sash and tried to pull off her underwear. Huckeba's dog, which usually barks at strangers, stood staring at the victim and did not bark until Huckeba jumped on her and she started screaming. The victim stated that she thought that Huckeba was going to rape and kill her.

After Huckeba left, the victim was able to cut the rope and she

jumped out of her window and ran for help. Later investigation showed that the Huckeba house was not ransacked and there was no evidence of forced entry.

The victim testified that she recognized the attacker as Huckeba 15 to 20 seconds after he jumped on her, by recognizing the smell of sealant-asphalt from his business on him. The victim also recognized Huckeba's regular rough and heavy breathing, and she saw his mouth through the mouth hole in the mask. She stated that she also recognized his large stomach and his distinctive hands. She recalled that she had taken note of his hands the night before the attack and had noticed that they were very small and rough. The victim stated that she had seen a mask like the one the attacker wore in Huckeba's closet and had previously seen Huckeba wear it. She recognized the mace spray from seeing it in the living room. The victim was absolutely certain that Huckeba was her attacker.

The neighbor to whose house the victim ran after the attack testified. He stated that the victim ran to his house after the incident on February 27 at about 7:00 a.m. The victim appeared to be very upset, she was shaking, and she told the neighbor that her "exchange father" had tried to rape her. The victim stated that she knew her attacker was Huckeba because he had small distinctive hands. This witness also stated that the Huckeba family owned a dog which barked at strangers.

Officers from the Douglas County Sheriff's Department who responded to the victim's call testified. One stated that he arrived at the Huckebas' house and that there were no cars at the residence on the morning of the incident. The victim told the officer that someone had tried to rape her. The officer observed items in the room which were consistent with the victim's account of the incident.

Another officer testified that Huckeba returned to the residence on the morning of the incident and was very cooperative. The officer stated that Huckeba did not inquire as to the victim's well being, nor did he ask whether his house had been broken into. The officer stated that he was present when Huckeba was read his *Miranda* rights and that he witnessed Huckeba consenting to the search of his house.

Officer Ashcraft testified that she received a call regarding the incident at 7:30 a.m. on February 27. She testified that a rope was still hanging off of the victim's arm when she arrived. She testified that Huckeba consented to the search of his residence and signed a consent form to that effect. She stated that he also signed a form acknowledging that he was read his *Miranda* rights. She stated that Huckeba stated that he had nothing to hide and gave her the keys to his residence.

Ashcraft stated that Mrs. Huckeba came to the residence shortly after she arrived and that after being told the victim's account of the

attack, Mrs. Huckeba stated that she was "not surprised."

Ashcraft conducted a search of the residence which revealed a videotape of Huckeba and his wife engaging in various sexual activities. Ashcraft also testified that several current Playboy magazines were found on the premises. She also found rope, self-defense surveillance spray, a razor, a bathrobe sash, a pair of Size A Sheer Energy Legg's pantyhose, and a curtain sash in the victim's bedroom. There was testimony that the pantyhose found in the victim's bedroom were the size and type of pantyhose which Mrs. Huckeba wore.

Ashcraft testified that later on that same date, she took statements from the victim, Mrs. Huckeba and Huckeba.

The videotaped statement which Officer Ashcraft took with Officer Copeland from Huckeba was played for the jury. In that statement, Huckeba stated that he was out of town on business at the time of the incident. Officer Copeland testified that during the investigation, Huckeba did not ask any questions regarding the attack and that this lack of curiosity was very unusual.

Mrs. Huckeba testified. She stated that when she left the house at 6:30 a.m. on February 27, the victim's car was in the driveway. She also testified that the doors to the house were locked when she left for work that morning. After the incident, she recalled that the house was not ransacked and that no items had been stolen. She stated that she owned a mace-type spray, which was moved on the day of the attack. Mrs. Huckeba also stated that her husband's hands were rough and that he had a fungus on them.

Mrs. Huckeba admitted that during the two-and-one-half year period in which the victim lived in her home, she had sometimes been jealous of the victim's relationship with Huckeba. Mrs. Huckeba stated that sometimes she felt "left out" of Huckeba's relationship with the victim. She stated that she did not like the way the victim walked around the house in a shirt and underwear —"half dressed."

There was testimony that a security video from a company about half a mile from the Huckeba home showed that the Huckebas' car was in the parking lot of that company at about 4:25 a.m. on the morning of February 27. At about 6:52 a.m. that same date, the Huckeba car was gone.

The victim's car was reported stolen on February 27. It was located in the same company parking lot at which the Huckebas' car had been parked. The videotape of that parking lot showed that the victim's car turned up in the lot by 6:52 on February 27 in the space next to the one in which the Huckeba car had been parked. When the victim's car was recovered, various items including a camera and the victim's purse, which contained $45, were found inside. Five dollars was taken from the victim's purse. There was no evidence of any forced entry into the car, and the car was locked when it was

recovered.

Huckeba's defense was alibi. Although Huckeba did not testify at trial, in his statement Huckeba denied any involvement in the crimes charged. He stated that he was out of town at the time of the crimes.

1. Huckeba claims that the evidence was insufficient to convict him of aggravated assault with intent to rape. Although he concedes that there was evidence of an assault, he argues that there was no evidence of intent to rape. We disagree and find that a rational trier of fact could find from the evidence adduced at trial proof of appellant's guilt of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see generally OCGA § 16-5-21.

2. Huckeba argues that the offenses of aggravated assault and false imprisonment merged as a matter of law and fact and that the conviction for both violated double jeopardy. Citing *Weaver v. State*, 178 Ga. App. 91, 94 (4) (341 SE2d 921) (1986), Huckeba claims that the evidence of the victim being held against her will during the attempt to tie her is evidence necessary to establish the charge of aggravated assault with intent to rape and that the factual basis for false imprisonment was "used up" in making the case for the aggravated assault charge.

We disagree and, pretermitting the issue of whether this enumeration was properly preserved, we find Huckeba's argument without merit. Given the instant facts, the state did not "use up" the evidence establishing false imprisonment in proving the charge of aggravated assault. See *Gilbert v. State*, 176 Ga. App. 561, 562 (2) (336 SE2d 828) (1985). The false imprisonment offense was complete upon Huckeba tying the victim's hands behind her back. The facts regarding the aggravated assault with intent to rape were separate and included Huckeba's actions in spraying mace on the victim, jumping on her, pulling the sheets off of her, straddling her, trying to pull off her underpants, and trying to tie her legs together. See generally OCGA §§ 16-1-6; 16-1-7.

3. Citing *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994), Huckeba claims that the trial court erred in failing to charge, after written request, on the lesser included offense of simple battery. We find no error in the trial court's failure to so charge. In *Edwards*, supra, the Supreme Court stated: "[t]he complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense *and there is no evidence raising the lesser offense*, there is no error in failing to give a charge on the lesser offense." Id. at 133. Here, Huckeba's defense was alibi. The State's evidence established the elements of aggravated assault with intent to rape. Contrary to Huckeba's argument, the evidence showed the commission of the completed of-

fenses as charged or the commission of no offense, and there was no error in the court's failure to charge the lesser offense. See *Leaver v. State*, 211 Ga. App. 876 (2) (440 SE2d 760) (1994).

Moreover, assuming arguendo, that there was evidence that Huckeba committed the lesser offense, in light of the overwhelming evidence against him, "it is highly probable that the failure to give this charge did not contribute to the verdict." *Edwards*, supra at 133.

4. Huckeba argues that the trial court erred and violated due process in admitting the videotape depicting a sexual encounter between him and his wife. He claims that the videotape put his character into evidence and was not otherwise admissible.

The trial court admitted the videotape in reliance on *Helton v. State*, 206 Ga. App. 215 (424 SE2d 806) (1992), in which the court stated: "[t]he true issue is whether the evidence sought to be excluded by the defendant is admissible to show defendant's bent of mind toward the *sexual activity with which he was charged* or defendant's *lustful disposition*. [Cits.]" *Helton*, supra at 216-217. Here, the court concluded that the videotape was admissible to show Huckeba's "lustful disposition."

Although the videotape was available at the jurors' discretion for viewing, it was never played for the jury. Huckeba has failed to show harm to him from the introduction of the tape, and we find no reversible error. See generally *Caldwell v. State*, 263 Ga. 560, 564-565 (13) (436 SE2d 488) (1993); *Ingram v. State*, 211 Ga. App. 252, 256 (6) (438 SE2d 708) (1993).

5. In his fifth enumeration, Huckeba claims that the court erred in allowing into evidence Copeland's repeated comments on the victim's truthfulness, Huckeba's guilt and lack of alibi, as well as Huckeba's comments on the victim's credibility. These alleged errors were all contained in the videotape of Copeland's interrogation of Huckeba. Prior to allowing the tape into evidence, the court determined that it would not allow the prosecution to present audio evidence which would not be permitted during cross-examination.

Despite the fact that portions of the tape were excised, Huckeba argues that portions of the remaining tape were impermissibly admitted. For instance, Huckeba objects to a portion of the interview in which Copeland states that he "knows" Huckeba committed the crime and that he thinks Huckeba is "about to bust." Huckeba cites several cases including *Smith v. State*, 259 Ga. 135 (2) (377 SE2d 158) (1989), and *Fordham v. State*, 254 Ga. 59 (2) (325 SE2d 755) (1985), and argues that one witness may not testify regarding the truthfulness of another and that the admission of Copeland's testimony here was erroneous.

We reject these arguments. The "testimony" to which Huckeba objects consists of Copeland's interrogation of Huckeba. Huckeba's

arguments ignore the fact that the videotape was of Copeland's interrogation of Huckeba. Copeland testified that he used various interrogation techniques in interviewing suspects and that his goal in interrogation was to get a reaction and a confession from the suspect. Thus, Copeland's comments during the videotaped interrogation were part of an effort to elicit a response — they were not, as Huckeba maintains, Copeland's opinion regarding Huckeba and the victim. Huckeba's statements within the videotape were also properly admitted.[1] See generally *Burley v. State*, 190 Ga. App. 75, 78-79 (3) (378 SE2d 328) (1989).

Moreover, even assuming arguendo that the evidence was erroneously admitted, the error, if any, was harmless. "In addition, a conviction will be affirmed despite error if it is highly probable that the error did not contribute to the verdict. [Cits.]" *Vincent v. State*, 264 Ga. 234, 235 (442 SE2d 748) (1994). Here, in the absence of Copeland's testimony there was overwhelming evidence of Huckeba's guilt, and thus the error, if any, was harmless.

6. Finally, Huckeba claims that his motion to suppress was erroneously denied in that his consent to the search was not knowing and voluntary; the search exceeded the scope of the consent given; the search was overly broad; and the evidence seized was not related to the crime for which he was charged.

Evidence at the hearing on the motion to suppress was that at about 9:00 a.m. on February 27, Officer Ashcraft was en route to the Huckeba residence when she met Huckeba who had already been taken into custody. Ashcraft read Huckeba his *Miranda* rights, and he signed a form confirming this fact. Ashcraft asked Huckeba for consent to search his residence. He consented to the search stating that "he had nothing to hide." Huckeba then read and signed a waiver of constitutional rights to a search warrant form. Huckeba gave Ashcraft the keys to his home. Ashcraft stated that Huckeba did not hesitate to consent to the search. She testified that he was not threatened and that there were no attempts to coerce him. There was no evidence that Huckeba's consent was ever revoked or withdrawn.

Ashcraft also testified that Mrs. Huckeba, who resided with Huckeba, was present for most of the search. She recalled that Mrs. Huckeba had stated that "it was fine" that her husband had given the officers permission to search.

We reject Huckeba's argument that his consent to the search was not knowing and voluntary. "Consent searches are valid but where the State relies upon consent, it has the burden to demonstrate from

---

[1] Huckeba does not argue here that the statement was inadmissible because it was not voluntary, although he did raise this argument below.

all the circumstances that the consent was voluntary and not the result of duress or coercion, express or implied. If it appears that a valid consent was given to search, such consent eliminates the need for either probable cause or a search warrant. In determining whether a search and seizure was reasonable, an appellate court can consider all relevant evidence of record, wherever located, including that adduced at a suppression hearing before trial and that adduced during trial. [Cits.] Moreover, the trial court's decision, express and implied, as to credibility and disputed questions of fact at a suppression hearing must be accepted on appeal unless clearly erroneous." *Garcia v. State*, 207 Ga. App. 653, 654 (1) (a) (428 SE2d 666) (1993).

Viewing the totality of the circumstances, see *Allen v. State*, 200 Ga. App. 326, 327 (1) (408 SE2d 127) (1991), we find that the trial court's decision that Huckeba's consent was valid was not clearly erroneous. Similarly, Huckeba's arguments that the scope of the search exceeded the scope of the consent given and that the evidence which was seized was not related to the crime for which he was charged are misplaced. See generally *Allen*, supra.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MAY 2, 1995 —
RECONSIDERATION DENIED MAY 24, 1995 —

*Jill L. Anderson, Elizabeth A. Geoffroy*, for appellant.
*David McDade, District Attorney, Bradley R. Malkin, Assistant District Attorney*, for appellee.