## A01A2079. BOHANNON v. THE STATE.

(555 SE2d 112)

ELDRIDGE, Judge.

A Bartow County jury found Robert Lee Bohannon guilty of trafficking in amphetamine, felony possession of marijuana, and possession of articles with an altered identification mark. On appeal, he does not challenge the sufficiency of the evidence introduced against him, but claims on two grounds that the trial court erred in denying his motion to suppress. Reviewing the errors as enumerated, we affirm Bohannon's conviction.

When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court. The trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous, and these findings will not be disturbed if there is any evidence to support them.[1]

At the hearing on the motion to suppress, Bohannon did not testify or offer any evidence. Viewed to uphold the trial court's findings, the State's evidence shows that Bartow County Sheriff's Investigator Mike Shinall received an anonymous tip that stolen jewelry and tools, as well as a quantity of drugs, could be immediately found in Bohannon's workshop located in an outbuilding behind his residence. Shinall enlisted the aid of two other officers: "Mike came around while we were at the office and just said that he needed some assistance; that he had some information that Mr. Bohannon had some stolen items and some drugs possibly at his place, and he was going to go see about doing a consent search."

The officers drove to Bohannon's workshop, a wooden outbuilding which apparently consists of two rooms: one a garage with multiple tools for working on cars and the other a pool table room. As they drove up, Bohannon came out of the workshop. Investigator Shinall testified that

> we told him that we had received a call from a female stating that there was stolen property such as jewelry and tools and also drugs inside the outbuilding, and we would like to check it if it was all right [sic] with him. He said it was. And I told him that he did not have to give me consent; that he had a right to refuse that if he didn't. He said to go ahead and look.

Acting upon Bohannon's consent, the officers searched the two rooms of the outbuilding. In the garage side, an upright, double-

---

[1] *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996).

stacked tool chest on wheels was locked. "Sgt. Evans asked Mr. Bohannon if he had a key to the toolbox. That's when he stated that, no, he didn't that it was a friend of his. . . . He stated it was a friend of his, and he did not have a key to it. Sgt. Evans asked him if he could get a hold of him. He [Bohannon] said he didn't know how to get a hold of him."

Bohannon did not claim ownership of the toolbox, and he watched without protest as the officers pried open the lock with a screwdriver. A search of the toolbox revealed the contraband for which Bohannon was indicted. When Shinall turned to ask Bohannon about the discovered contraband, he was no longer in the garage. A search of the residence showed that Bohannon had fled. *Held*:

1. In his first enumeration of error, Bohannon contends that he had a possessory interest in the toolbox belonging to his friend based on a bailment theory and, thus, the trial court erred in finding that he did not have standing to contest the search of the toolbox. We disagree.

"A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[2] In that regard, "[a] bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust."[3] A bailment involves either an express or implied mutual agreement to safe keep property between the owner and its custodian either gratuitously or for some consideration. "That is, a bailment relationship is created when one party involved in an undertaking . . . to safeguard the personal property another and exercises complete dominion at all times over the property."[4] Further, when a bailment is created, the bailee becomes liable for damage to the property for failure to exercise the requisite care to safeguard it.[5] Under the law, then, whether a bailment exists depends upon the relationship between the owner of the property and the possessor of the property as to the disposition of the property.

In this case, there is no evidence establishing a bailment relationship between Bohannon and his unavailable friend. Bohannon did not testify either at the hearing on the motion to suppress or at trial. There is no evidence of an agreement either express or implied between Bohannon and his friend for Bohannon to hold the toolbox

---

[2] *Rakas v. Illinois*, 439 U. S. 128, 134 (99 SC 421, 58 LE2d 387) (1978).
[3] OCGA § 44-12-40.
[4] *Park 'N Go &c. v. U. S. Fidelity &c. Co.*, 266 Ga. 787, 790 (471 SE2d 500) (1996).
[5] OCGA § 44-12-43.

for his friend. There is no evidence that the toolbox was not simply abandoned or accidentally left behind. The only evidence about the disposition of the toolbox was Bohannon's representation to the officers that it "was a friend of his." This is simply insufficient to establish the "mutual agreement" necessary for a bailment relationship.

The burden is on the one claiming a violation of Fourth Amendment rights to demonstrate that he has standing to contest such violation.[6] The evidence in this case does not establish "a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust."[7] Thus, Bohannon has failed to establish standing to challenge the search of the toolbox based on a bailment theory. Indeed, if, arguendo, Bohannon was a gratuitous bailee charged with the safekeeping of the toolbox, he had a duty to protest the forceful entry therein.[8] He did not do so, but acquiesced by his silence in its search by the officers. Consequently, the error as enumerated is without merit.

2. Bohannon next contends that the search of the toolbox exceeded the scope of the consent given because it was locked and without a key. The standing issue addressed in Division 1 of this opinion is dispositive of the instant enumeration of error.

Moreover, Bohannon gave the officers consent to search the garage specifically for stolen tools, as well as jewelry and drugs. We do not find that a search of a toolbox exceeds the scope of consent given to search for stolen tools. Since the toolbox was well within the scope of places to look for stolen tools, the fact that the box was locked and without a key does not exempt it from a consensual search absent a withdrawal of consent. "Once consent is legally obtained, it continues until it is either revoked or withdrawn."[9] It is undisputed that the consent to the search for stolen tools was legally obtained from Bohannon. He was present and watching as the officers pried the lock on the toolbox. Bohannon disclaimed ownership of the box and did not register any objection to the officers' search thereof. "The evidence in the case sub judice authorizes the trial court's finding that defendant's consent was free and voluntary and that the law enforcement officers did not exceed the scope of defendant's consent."[10]

---

[6] *Atwater v. State*, 233 Ga. App. 339, 340 (2) (503 SE2d 919) (1998).

[7] OCGA § 44-12-40.

[8] OCGA § 44-12-43. See *Engram v. Sonny Campbell's Gulf*, 200 Ga. App. 40, 41 (406 SE2d 551) (1991).

[9] *Mixon v. State*, 184 Ga. App. 623, 624 (362 SE2d 111) (1987); *Miller v. State*, 183 Ga. App. 55, 56 (357 SE2d 876) (1987).

[10] *Allen v. State*, 200 Ga. App. 326, 328 (1) (408 SE2d 127) (1991).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED OCTOBER 5, 2001 —

King, King & Jones, David H. Jones, for appellant.
T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney, for appellee.