The STATE of Ohio

v.

**CRAYCRAFT.**

2008-Ohio-2192.]

Court of Common Pleas of Ohio,
Clermont County.

Nos. 2007 CR 0489 and 2007 CR 1005.

Decided March 6, 2008.

8

Donald White, Clermont County Prosecuting Attorney, and Scott Smith, Assistant Prosecuting Attorney, for plaintiff.

W. Kenneth Zuk, for defendant.

HADDAD, Judge.

{¶ 1} This matter came before the court on November 27, 2007, pursuant to a motion to suppress or motion in limine filed by the defendant. The hearing was continued in progress until December 12, 2007. Upon hearing oral arguments on the motion, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} The defendant, Jeremiah Craycraft, was originally indicted on June 13, 2006, in case No. 2007 CR 0489, on two counts of felonious assault and four counts of endangering children. However, the defendant was reindicted on these same charges on December 5, 2007, in case No. 2007 CR 1005, with the indictment containing two additional counts of domestic violence against his children.[1]

{¶ 3} In Count One of the indictment, the defendant is charged with felonious assault against his minor child, Sierra Craycraft. Specifically, he is accused of causing Sierra Craycraft, born March 8, 2007, to sustain rib fractures as well as a buckle fracture of the left tibia. Further, he is accused of causing frenulum tears inside her mouth as a result of forced feeding. In Count Two of the indictment, the defendant is charged with felonious assault against his minor child, Kaiden Craycraft. Specifically, he is accused of causing traumatic brain injury to Kaiden Craycraft, born March 8, 2007. Kaiden also sustained retinal hemorrhaging and a displaced fracture of the distal right radial metaphysis with periosteal reaction.

---

1. The court notes that the state has dismissed Counts One through Six of the indictment in case No. 2007 CR 1005. The original six counts of the indictment in case No. 2007 CR 0489 have been consolidated, by agreement, with counts Seven and Eight of the indictment in case No. 2007 CR 1005. All documents and proceedings from case No. 2007 CR 0489 will apply to both cases.

The defendant is further charged under Counts Three through Six of the indictment with endangering his minor children, resulting in the same injuries previously discussed. In Counts Seven and Eight of the indictment, the defendant is charged with committing domestic violence against his two children, and it is alleged that the defendant has prior convictions for domestic violence.

{¶ 4} The defendant filed a motion to suppress and a motion in limine in relation to several videotaped statements made during the course of the investigation, and a hearing was held on the motions. The first set of interviews occurred on May 17, 2007, prior to the defendant's arrest.[2] The defendant objects to the admission of those interviews on the grounds that the videotape contains hearsay statements of the officers and statements made by the officers regarding the defendant's reputation, as well as statements of the officers' opinions as to the course of events that resulted in the children's injuries. The defendant argues that these statements would not be admissible at trial under Evid.R. 608(A), 701, 702, and 802. The defendant further argues that the interviews contained information that, taken as a whole, would be highly prejudicial to the defendant. Further, the defendant suggests that eliminating the objectionable portions of the videotape would result in a loss of context and would cause the tape to lose its probative value. Therefore, the defendant encourages the court to exclude in their entirety the three interviews that occurred prior to the defendant's arrest.

{¶ 5} Another interview occurred on May 31, 2007, after the defendant was incarcerated on a separate and unrelated charge. The defendant argues that this video contains all of the same issues raised with respect to hearsay, reputation, and opinion. However, the defendant asserts that the opinion testimony was much more serious, as the investigator argumentatively told the defendant what she believed happened in this case.

{¶ 6} Finally, the defendant raises an issue of constitutional significance. The defendant argues that he appeared in jail-issued clothing, handcuffs, and shackles during the interview that occurred after his incarceration. The defendant asserts that playing this video before the jury would result in a direct violation of the holding of the United States Supreme Court in *Estelle v. Williams* (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. Therefore, the defendant requests that the court grant the motion to suppress on the grounds that this video would be unfairly prejudicial to the defendant.

## LEGAL ANALYSIS

{¶ 7} The defendant objects to the admission of the first set of interviews dated May 17, 2007, which occurred prior to the defendant's arrest, on the grounds that

---

2. This interview was, more accurately, broken up into three separate interrogations.

the videotape contains hearsay, statements about the defendant's reputation, and statements of opinions as to the course of events that resulted in injuries to the defendant's children. It is the defendant's contention that these statements would not be admissible at trial under Ohio's Rules of Evidence. The defendant further argues that the interviews contained information that would be highly prejudicial to the defendant and thus should be excluded under Evid.R. 403. The defendant suggests that eliminating these portions would result in loss of context and probative value; therefore, the defendant encourages the court to exclude the entirety of the interviews that occurred prior to the defendant's arrest.

{¶ 8} Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The remainder of the defendant's objections are made pursuant to Evid.R. 608(A), 701, 702, and 802. Those rules provide as follows:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Evid.R. 608(A).

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Evid.R. 701.

A witness may testify as an expert if all of the following apply: The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; [t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; [t]he witness' testimony is based on reliable scientific, technical, or other specialized information.

Evid.R. 702(A), (B), and (C).

Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme

Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

Evid.R. 802.

### Interviews of May 17, 2007

{¶ 9} The first statement to which the defendant objects occurred at 2:16 on the video. The defendant argues that it is too prejudicial for the jury to hear about prior occurrences of domestic violence in the defendant's past, and the evidence shows prior bad acts that the jury is not entitled to hear. Pursuant to the Ohio Revised Code, the state is required to show that the defendant has pleaded guilty to or been convicted of two or more offenses of domestic violence in order for the defendant to be convicted of a felony of the third degree. R.C. 2919.25(D)(4). The court finds that because the state is required to prove prior instances of domestic violence, the admission of the officer's and the defendant's statements from the videotape regarding the defendant's alleged domestic violence against Staci Kraft will not prejudice the defendant to any greater extent than he will be prejudiced under the statute. For this reason, the court finds that the prejudicial effect of the statement fails to outweigh the probative value of the defendant's response.

{¶ 10} The next series of statements to which the defendant objects is alleged hearsay statements made by the officer to the defendant. This objection encompasses all statements made by the officer during the interrogation that included information obtained from other individuals about the defendant personally or about the cause of the children's injuries.

{¶ 11} "Evid.R. 801(C) defines 'hearsay' as 'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence *to prove the truth of the matter asserted*.' (Emphasis added.) A witness is barred on hearsay grounds from testifying as to the statements made by another only when the statement is offered to prove the truth of the matter asserted in the statement, and only where the statement falls outside any exceptions to the rule against hearsay as set forth in, e.g., Evid.R. 803 and 804." *State v. Carter* (1995), 72 Ohio St.3d 545, 549, 651 N.E.2d 965. True questions or inquiries are incapable of being proved as either true or false; therefore, they cannot be offered to prove the truth of the matter asserted and do not constitute hearsay under Evid.R. 801. Id. at 549–550, 651 N.E.2d 965. See also *United States v. Wright* (C.A.6, 2003), 343 F.3d 849, 865–866. The statements alleged by the defendant to be hearsay comprise statements made by the investigating officer that another individual had told him certain information about the case. The court notes that if these statements are indeed hearsay, then Evid.R. 805 applies. "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the

combined statements conforms with an exception to the hearsay rule provided in these rules." Evid.R. 805. Based upon the court's analysis, which follows, the court finds that Evid.R. 805 has no application in this case.

{¶ 12} The court finds that the statements made by the officer during the interrogation do not constitute inadmissible hearsay, because these statements are not being offered to prove the truth of the matter asserted in them. The officer's statements, including those allegedly made by Staci Kraft, are designed to elicit a response from the defendant and are not being offered to prove that the events of April 26, 2007, through May 15, 2007, occurred as stated in the interrogation. Instead, the officer is merely attempting to convince the defendant to express his belief as to how the children were injured. Pursuant to Ohio law, true questions or inquiries are incapable of being proved as either true or false. The court finds that the statements by the officer were designed merely to elicit a response; therefore, these statements by the officer were interrogatory statements that are incapable of being proved as either true or false. The court notes that the defendant was given an opportunity to respond to the statements made by the officer, thus bolstering the court's conclusion that these statements were indeed questions or inquiries and not assertions. The statements allegedly made by Staci Kraft and others were merely an interrogation tactic and are not being used by the state to prove the truth of the matter included within them. The only statements from the interrogation that are being offered for their truth are those statements made by the defendant, and the questions by the officer regarding Staci Kraft and others merely provide context for these answers. Therefore, the court finds that the defendant's hearsay objections to the interrogations conducted on May 17, 2007, are overruled.

{¶ 13} The court would also like to emphasize that the defendant, through his attorney, can question Staci Kraft regarding the events of April 26, 2007, through May 15, 2007. Therefore, the statements during the interrogation allegedly made by Staci Kraft will be less prejudicial, as she may or may not testify to those under oath and in open court. Further, the court intends to give the jury a limiting instruction prior to the playing of the videotape in which the jury will be told that they are not to consider the statements made by the officer for any purpose other than to give context to the defendant's answer; thus, any potential prejudice to the defendant from the statements made in the video will be lessened. For these reasons, the court finds that the probative value of the defendant's answers far outweighs any prejudice he may suffer as a result of the question, to which he was given an opportunity to respond.

{¶ 14} The court is mindful of the case of *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311, in which the Ohio Supreme Court held that a defendant, under Evid.R. 801(D)(2)(b), would not be able to deny statements relating to the

victim's state of mind, thus rendering him unable to manifest his adoption of the statements or belief in their truth. *Kidder*, 32 Ohio St.3d at 284, 513 N.E.2d 311. The court finds, however, that the interrogating officer did not use statements relating to the victims' (children) or another witness's state of mind. All statements used by the officer during his interrogation related to statements by a witness to which the defendant was capable of offering a denial; therefore, the court finds that *Kidder* is distinguishable from this case.

{¶ 15} The defendant next argues that the interrogating officer expressed his personal opinion as to how the children's injuries occurred. The court was unable to find any cases from Ohio that are directly on point with the defendant's objections. The court notes, however, that *Kidder*, supra, addresses the issue arising when an interrogating officer expresses his opinion as to the suspect's veracity. The court held that the opinion and hearsay statements in that case were inadmissible but that "the jury was fully aware of the context in which the inadmissible hearsay and opinion statements of the police were made: the officers were engaged in an interrogation of a criminal suspect." Id. at 285, 513 N.E.2d 311. The court held that the effect on the jury would have been much less than the same statements made by the officer while testifying at trial.

{¶ 16} The court agrees and accepts the Supreme Court's finding that any statements made by the officer as to the defendant's veracity would be inadmissible opinion testimony; however, the court finds that no such statements were made. The officer made a statement at 25:40 of the May 17, 2007 interviews in which he indicated that the defendant's answers were contradictory to statements made by other individuals. Further, at 26:23 of the same interviews, the officer indicated that he was not sure whether the defendant was disclosing all relevant information. The court finds that these statements do not constitute the officer's opinion as to the defendant's veracity. At no time does the officer indicate that the defendant is being untruthful, because the officer's statements could be understood as questioning the veracity of the other witnesses' statements as well. From these statements, the court concludes that the officer is merely attempting to get more information from the defendant and not questioning whether the statements he had made up to that point were truthful; therefore, the court finds that *Kidder* is distinguishable.

{¶ 17} Because the court finds this to be an issue of first impression in Ohio, its only recourse is to look to the decisions of other states for guidance. Fortunately, the appellate courts of other states have had the opportunity to address this issue or a variant of it. In *Huckeba v. State* (1995), 217 Ga.App. 472, 458 S.E.2d 131, The Court of Appeals of Georgia addressed objections by the defendant that the officer, in his recorded interrogation, expressed his opinion as to the victim's truthfulness and the defendant's guilt and lack of alibis. The court found that the

officer's statements were interrogation techniques used in interviewing suspects and that the officer's goal was to get a reaction and a confession from the defendant. The court determined that the officer's comments were part of an effort to elicit a response and were not the officer's opinions regarding the defendant and the victim. For this reason, the court held that the statements within the videotape were admissible.

{¶ 18} In *Lanham v. Commonwealth* (Ky.2005), 171 S.W.3d 14, the Supreme Court of Kentucky addressed a situation in which the videotaped interrogation included statements by the interrogating officer that the defendant was not being truthful. During the interrogation, the defendant's story of what happened on the night in question shifted repeatedly. The court held that the statements were admissible; however, the statements could not be used for the truth of the matter asserted in them, i.e., that the defendant was lying. The court found that the comments were not an attempt to describe to the jury the defendant's personality and that they were not aimed at impeaching a witness. The court determined that the officer was not trying to convince anyone that the defendant was lying but was instead using an interrogation technique aimed at showing the defendant that the officer recognized that there were holes and contradictions in his story. The court further found that these comments were an integral part of the interrogation, as they provide the necessary context for the defendant's responses. The statements by the officer were perceived to be a legitimate and ordinary interrogation technique. The court found that it was necessary for the jury to hear the context for the defendant's answers. The court stated that the best practice would be for the trial court to give a limiting admonition to the jury prior to the playing of the videotape in order to remedy any prejudice that might occur from the jury hearing the officer's comments.

{¶ 19} In *Anderson v. State* (Apr. 13, 1994), Alaska App. No. A-4467, 1994 WL 16196231, the Court of Appeals of Alaska dealt with a situation in which the interrogating officers suggested alternative scenarios to the narrative told by the defendant. The defendant argued that the officers' statements constituted inadmissible opinion testimony that should have been redacted from the video. The trial court ruled that these statements did not constitute opinion testimony but rather provided context for the defendant's statements. The court of appeals held that the interview was played because it contained the defendant's statements and that the officers' statements were admissible not for the truth of the matters asserted in them but because they provided the context for the defendant's responses. *Anderson* at 3. The court further stated that the limited purpose for the officers' statements was clear to the jury but that the trial court's limiting instruction clarified even further that the officers' statements were to be used only to the extent that they provided context for the defendant's responses.

Therefore, the court held that the officers' statements were admissible and did not constitute opinion testimony.

{¶ 20} Pennsylvania's intermediate appellate court, in *Commonwealth v. Kitchen* (Pa.Super.1999), 730 A.2d 513, 521–522, allowed the introduction of comments in which the officers asked the defendant whether she had lied, thus eliciting responses from the defendant, because they were questions that did not involve an opinion as to the truth or falsity of the defendant's statements or an opinion as to the guilt of the defendant. Further, the defendant offered responses to those inquiries. The court did not allow those comments in which the officers actually accused the defendant of lying. See also *State v. Demery* (2001), 144 Wash.2d 753, 30 P.3d 1278; *State v. Cordova* (2002), 137 Idaho 635, 51 P.3d 449; *Dubria v. Smith* (C.A.9, 2000), 224 F.3d 995; contra *State v. Elnicki* (2005), 279 Kan. 47, 105 P.3d 1222, 1229; *State v. Jones* (2003), 117 Wash.App. 89, 68 P.3d 1153.

{¶ 21} The court finds that the officer's statements of "opinion" were not opinion testimony, as they were designed merely to elicit a response from the defendant. The court further finds that the only reason they are being offered by the state is to provide the context for the defendant's responses. The defendant had the opportunity to admit, deny, and explain any alternative scenario that the officer gave for the children's injuries, as well as any reason the officer gave for why the defendant might have inadvertently injured the children. Further, the officer did not give his opinion as to the defendant's veracity. He merely indicated that he felt there were things that the defendant was not disclosing, to which the defendant was always given the opportunity to respond. It is these responses that the state will be presenting as evidence, and the officer's questions merely provide the context for the answer. For this reason, the court finds that the defendant's objections as to the officer's opinion are overruled in their entirety.

{¶ 22} The court is aware of the fact that a jury could misunderstand the importance of the officer's questions; however, the court finds that the use of a limiting instruction will alleviate any potential prejudice the defendant might suffer as a result of the officer's interrogation tactics. For this reason, the court intends to give a limiting instruction that the officer's questions are not evidence and are to be used only to the extent that they provide context for the defendant's responses.

{¶ 23} The court would note that at 41:04 of the first videotape, the officer states that one of the children had fluid on his brain, which he assumes would create the hemorrhaging. The defendant objected, pursuant to Evid.R. 702, that this is an opinion that the officer was not qualified to give. The court observes that the statement is not being used for its truth, i.e., that the fluid caused the hemorrhaging. Instead, the statement is being used to elicit a response from the

defendant about the initial cause of the head trauma to the child. The court finds that this statement is part of the interrogation tactics employed by the officer; however, the state cannot rely on this statement from the officer to support that the trauma to the defendant's head caused the fluid on the brain, which in turn caused hemorrhaging. Causation of these injuries must be established by a qualified medical expert. The interrogating officer is not qualified to establish causation; however, he may use statements such as this to elicit a response from the defendant as to the events leading up to the trauma to the infant's head. The defendant was given an opportunity to explain how he thought the child suffered trauma to his head. The court finds that the statement is admissible for the purpose of the interrogation but is not admissible to prove causation. Therefore, the state will be required to bring in a qualified medical expert to explain what may have caused the hemorrhaging.

{¶ 24} The court would also like to note that there is a separate interview occurring on May 17, 2007, at approximately 50:51 of the first videotape. The state must remove this portion of the videotape so that the jury is not exposed to this interview, since it is not an interview of the defendant.

### Interviews of May 31, 2007

{¶ 25} A second set of interviews occurred on May 31, 2007, after the defendant was incarcerated on a separate charge. The defendant contends that this video contains all of the issues raised with respect to hearsay, reputation, and opinion. The defendant asserts, however, that the opinion testimony of the officer was much more serious, as she argumentatively told the defendant what she believed happened in this case. The defendant also appears in jail-issued clothing, shackles, and handcuffs during this interrogation.

{¶ 26} The defendant's first objection occurred at 22:07 of the second videotape. This objection was based upon the fact that the officer mentions prior domestic-violence charges against the defendant. The court has previously discussed this issue in relation to the first set of interviews conducted on May 17, 2007, and the same rationale applies. The court finds that the statements regarding past occurrences of domestic violence are admissible, because the state is required to prove prior domestic-violence convictions pursuant to the domestic-violence statute.

{¶ 27} The defendant's next set of objections involves alleged hearsay statements made by the interrogating officer. Again, the court has addressed this issue in regard to the first set of interviews on May 17, 2007, and the same rationale applies. The court finds that the statements made by the officer during the interrogation are not inadmissible hearsay, because they are not being offered to prove the truth of the matter asserted in them. The officer's

statements, including those allegedly made by Staci Kraft and others, are designed to elicit a response from the defendant and are not being offered to prove the events of April 26, 2007, through May 15, 2007. Further, the defendant was given an opportunity to respond to each statement the officer made. The court notes that *Kidder* does not apply to this interview, because the officer did not offer questions going to Staci Kraft's or others' states of mind. Therefore, the court finds that the defendant's hearsay objections as to the May 31, 2007 interviews are overruled.

{¶ 28} The court also intends to give the jury a limiting instruction prior to the playing of this videotape, in which the jurors will be told that they are not to consider the officer's statements for any purpose other than to give context to the defendant's answer; therefore, potential prejudice, if any, to the defendant from the statements made in the video will be lessened. Based upon the foregoing, the court finds that the probative value of the defendant's answers far outweighs any prejudice he may suffer as a result of the question, which he was given an opportunity to answer by denying or explaining.

{¶ 29} The defendant also objected to the alleged statements of opinion given by the officer; however, the defendant argues that this officer's statements of opinion were much stronger than those from the first video. The court has also previously addressed this issue and finds that the same rationale applies here as well. The officer's statements of opinion do not constitute opinion testimony, as they were designed to elicit a response from the defendant. The only reason these statements are being offered by the state is to provide the context for the defendant's responses. The defendant had the opportunity to explain any alternative scenario for the children's injuries, as well as any alternative reasons for why the defendant might have caused injury to the children. Further, the officer did not give her opinion as to the defendant's veracity, as prohibited by *Kidder*. She merely indicated that she felt there was more to the story, a remark to which the defendant was always given the opportunity to respond. It is these responses that the state intends to present as evidence, and the officer's questions merely provide the context for the defendant's answer. Therefore, the court finds that the defendant's objections as to the officer's opinion are overruled in their entirety.

{¶ 30} Again, the court finds that the use of a limiting instruction will alleviate potential prejudice, if any, that the defendant might suffer as a result of the officer's interrogation tactics. For this reason, the court intends to give a limiting instruction that the officer's questions are not evidence and are to be used only to the extent that they provide context for the defendant's responses.

{¶ 31} The court notes that the defendant's objections at 1:10:28 and 1:10:56 of the second interviews were based upon the fact that the officer gave an

18

opinion as to the ultimate issue in the case. However, even if this were opinion testimony, which the court has already determined to the contrary, the testimony would not be subject to exclusion under Evid.R. 704. Under Ohio's Rules of Evidence, "testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. Therefore, the court finds that because the statements were otherwise admissible, they must not be excluded simply because they go to the ultimate issue to be decided by the jury.

{¶ 32} The court further observes that the officer explained in detail at 1:37:42 what she believes a buckle fracture to be and how a buckle fracture may occur. The defendant objected to this explanation pursuant to Evid.R. 702. The court finds that the officer qualifies her statement with the fact that she is not a medical doctor. Also, the court finds that the officer is not making the statement for its truth, but is instead attempting to get the defendant to explain how his child might have acquired such an injury. The court finds that this statement is admissible for the reasons stated previously; however, the statement is inadmissible to prove that a buckle fracture existed and the causation of such an injury. The state will be required to bring in a qualified medical expert to explain this injury and how it might have occurred. Therefore, the statement is admissible only for the limited purpose of providing context for the defendant's answer.

{¶ 33} The next objection involves statements by the interrogating officer about a polygraph examination given to Staci Kraft. Those sections of the interrogation occur at 1:06:31, 1:11:25, and 1:48:11. The court finds that any reference to a polygraph exam given to Staci Kraft is too prejudicial. The probative value of these statements and any response that the defendant might have given is outweighed by the prejudicial effect of the statements and responses. Therefore, the court finds that the defendant's objections to the mention of a polygraph exam are sustained, and the questions and responses will be removed by the state.

{¶ 34} The court notes that the hearsay objection at 1:06:43 is within the same dialogue as one of the references to the polygraph examination. Pursuant to the court's prior discussions on the defendant's hearsay objections, the court finds that the alleged hearsay statement at 1:06:43 is admissible; however, that is true only if the state can eliminate any reference to the polygraph examination without changing the context of this statement. If the context changes when the reference to the polygraph is eliminated, the state must remove the entire statement.

{¶ 35} The defendant's final objection to both sets of interviews is that if any portion of those interviews is redacted, then the entire video loses context,

and the probative value is diminished. The court finds, however, that the only statements to be removed are those pertaining to the polygraph examination allegedly given to Staci Kraft. These statements occur at 1:06:31, 1:11:25, and 1:48:11 of the May 31, 2007 interviews. Their removal will have no effect on the interviews of May 17, 2007; therefore, the defendant's objection as to that interview is overruled. Further, the court does not believe that the redactions change the context of the May 31, 2007 interviews, as they constitute only a small section of the video; therefore, the defendant's objection is overruled as to the May 31, 2007 interviews. However, the court would note that it will allow the defendant to renew his objections as to the change of context, only as to those specific portions of the interview, once the parties have reviewed the edited version of the videotape.

{¶ 36} Almost all of the courts that have considered these issues recognize this form of questioning as a legitimate and effective interrogation tool. Because such comments are an integral part of the interrogation process, several courts have noted that they provide the necessary context for the defendant's responses. The court agrees that such recorded statements during an interrogation are a legitimate, and even ordinary, interrogation technique, especially when the defendant's story shifts and changes. The court further agrees that retaining these comments is necessary to provide a context for the answers given by the defendant.

{¶ 37} The defendant next argues that requiring him to appear before the jury in jail-issued clothing, shackles, and handcuffs via the videotaped interrogation violates the holding of *Estelle v. Williams.* "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *Estelle,* 425 U.S. at 503, 96 S.Ct. 1691, 48 L.Ed.2d 126, citing *Drope v. Missouri* (1975), 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." Id. In order to implement this presumption of innocence, the courts "must be alert to factors that may undermine the fairness of the fact-finding process. * * * [C]ourts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." Id., citing *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368. Courts must evaluate the likely effects of a particular procedure on the fundamental right to a fair trial, and this evaluation must be based on reason, principle, and common human experience. Id. at 504, 96 S.Ct. 1691, 48 L.Ed.2d 126.

{¶ 38} "Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." Id. Compel-

ling an accused to stand trial in jail clothing is a constant reminder to the jury of the accused's condition and could affect a juror's judgment. Id. at 504–505, 96 S.Ct. 1691, 48 L.Ed.2d 126. Such clothing is likely to be a continuing influence throughout the trial and creates an unacceptable risk of impermissible factors coming into play. Id. at 505, 96 S.Ct. 1691, 48 L.Ed.2d 126. Equally troubling is the fact that compelling the accused to stand trial in jail clothing operates against those who are unable to post bond prior to trial. Id. The Supreme Court in *Williams* held that the "particular evil proscribed is *compelling* a defendant, against his will, *to be tried* in jail attire." (Emphasis added.) Id. at 507, 96 S.Ct. 1691, 48 L.Ed.2d 126.

{¶ 39} The court finds that the defendant will not be unfairly prejudiced if the jury is permitted to view the interrogation in which the defendant is wearing jail garb. Any prejudice that the defendant might suffer is far outweighed by the probative value of this video. Further, the Supreme Court, in *Williams,* held that an accused cannot be compelled to stand trial while dressed in prison garb; however, the defendant in this case will not be compelled to stand trial while wearing jail attire. Instead, the defendant will be permitted to dress in street clothes during the trial unless he chooses otherwise and makes that choice known to the court. Further, the jury will see the defendant dressed in prison garb for approximately two and a half hours in what is expected to be a five-day trial. The court finds that the jury will view the defendant in his jailhouse attire for a diminutive amount of time during the course of the trial; thus, any prejudice that the defendant might suffer is outweighed by the probative value of the video.

{¶ 40} The court would like to note that this video was not made in contemplation of trial; therefore, the interrogating officers did not in bad faith compel the defendant to dress in prison attire for the purpose of its prejudicial value. The defendant was in custody when this video was made and was required to dress in jailhouse clothing for that reason. The officers could not have known what the defendant was going to say during the course of the interrogation and therefore could not have known that this video would be used at the defendant's trial. The court understands that the attire of the defendant might have some prejudicial effect on the jury; therefore, it intends to give a limiting instruction prior to the jury's viewing of this video in order to alleviate any potential prejudice that the video might cause. The jurors will be instructed that they cannot consider the fact that the defendant is dressed in prison attire for any purposes during their deliberations. For the foregoing reasons, the court denies the defendant's motion to suppress the video that depicts the defendant dressed in jailhouse attire.

## CONCLUSION

{¶ 41} Based upon the foregoing analysis and the competent, credible evidence presented, the court finds that as to the first videotape, dated May 17, 2007, the defendant's objections are overruled in their entirety. As to the second video-tape, dated May 31, 2007, the defendant's objections as to the prior domestic-violence charges, hearsay statements, and opinion statements are overruled.

{¶ 42} The defendant's objections to the references to the polygraph exam are sustained and must be removed by the state. Those portions of the video occur at 1:06:31, 1:11:25, and 1:48:11. The hearsay objection at 1:06:43 is overruled to the extent that the reference to the polygraph can be eliminated without changing the context of the statement and the answer.

{¶ 43} The state is also ordered to remove the separate interview occurring at approximately 50:51 of the May 17, 2007 videotape, because the interview is not of the defendant.

{¶ 44} The defendant's objections as to the change of context in both sets of interviews are also overruled, because only a small portion of the second set of interviews will be eliminated. The court finds that those redactions should have no effect on the context of the video. However, the court will permit the defendant to renew his objections, if necessary, as to those specific portions of the interview once the parties have reviewed the edited version of the videotape.

{¶ 45} Pursuant to the court's decision, the defendant's motion to suppress the second video, dated May 31, 2007, for the reason that the defendant is dressed in jail attire is hereby denied.

{¶ 46} The state is ordered to submit the edited videos to the court by 4:00 p.m. on March 20, 2008, so that the court can review the videos prior to trial.

{¶ 47} This decision shall serve as the judgment entry in this matter.

So ordered.