### A09A1456. STIDHAM v. THE STATE.
(683 SE2d 906)

MIKELL, Judge.

During an investigation into burglaries committed in 2007 in Berrien, Tift, Thomas, Houston, and Pulaski counties, Berrien County Sheriff Jerry Brogdon ("the Sheriff") promised Christopher D. Stidham that in exchange for providing a statement, he would only be prosecuted on one count of burglary in Berrien County.[1] Stidham gave statements to law enforcement officers in various counties, including Pulaski County, implicating himself, Coty D. Benefield ("Coty"), and John Kyle Rose. Despite the promises made to him, Stidham was indicted along with Coty and Rose on two counts of burglary in the Superior Court of Pulaski County. Rose and Coty entered guilty pleas. Stidham filed a motion to suppress his statements as well as all evidence obtained as a result of his statements. The case proceeded to a bench trial. Over defense counsel's objection, the trial court elected not to hold a pretrial hearing on the motion to suppress, but instead heard all of the evidence pertaining to the motion as well as to the substantive charges against Stidham at a single hearing.

Stidham's co-defendants testified against him. Thereafter, the trial court suppressed Stidham's confession to the Sheriff and his statement to the Pulaski County investigator, holding that they were involuntary. The court ruled, however, that the testimony of Stidham's co-defendants was admissible under either the independent source doctrine or the inevitable discovery doctrine. The court found Stidham guilty and sentenced him to 12 years probation, including service of 425 to 450 days in a probation detention center. On appeal, Stidham argues that the trial court erred in failing to suppress all evidence obtained as a result of his involuntary confession, including his co-defendants' testimony. Stidham further argues that, in the absence of testimony that should have been excluded, the evidence is insufficient to sustain his guilt. We disagree and affirm.

---

[1] The record contains an order entered by the Superior Court of Houston County suppressing Stidham's confession to the Sheriff as well as all physical evidence obtained subsequent thereto. That court concluded that the Sheriff committed "gross misconduct" by intentionally making false promises to Stidham in exchange for his confession. The order references the Sheriff's affidavit, which has also been included in the record, in which he avers that the confession was involuntary.

1. Stidham contends that the testimony of his co-defendants implicating him in the Pulaski County burglaries should have been suppressed under the "fruit of the poisonous tree" doctrine because the testimony resulted directly from Stidham's involuntary statement to the Sheriff.[2] Application of the correct standard of review dictates otherwise.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and *credibility* must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[3]

So viewed, the evidence relevant to the suppression issues shows that in the middle of July 2007, Tony Benefield,[4] who was investigating a burglary of a residence in Berrien County belonging to an elderly couple surnamed Robinson, received a call from a Houston County detective reporting that a safe containing the Robinsons' documents had been found in Houston County. The detective gave Benefield the names of two suspects: Michael Howard and Coty. Benefield was unable to find any information on these suspects. A

---

[2] The state argues that Stidham waived the right to challenge this ruling on appeal by failing to raise it in his motion. See OCGA § 17-5-30 (b) (the motion "shall be in writing and state facts showing that the search and seizure were unlawful"). We disagree. The motion specifically requests the suppression of all statements made by the co-defendants. The state cannot now complain that it did not receive reasonable notice that Stidham intended to seek suppression of their live testimony. Compare *State v. Allen*, 256 Ga. App. 798, 799-800 (570 SE2d 34) (2002) (none of the arguments made by defendant on appeal were raised in his written motion, argued in the trial court, or ruled on; hence, they were waived). In addition, defense counsel raised the issue at the first opportunity permitted by the trial court. The court overruled defense counsel's objection to the court's refusal to hold a pretrial hearing on the motion, so counsel raised the issue during arguments at the close of the evidence. Furthermore, following arguments of counsel, the trial court recessed the proceedings for a week to allow the parties to submit additional authorities. Under these circumstances, the state cannot claim that it was not reasonably put on notice of Stidham's argument. There was no waiver.

[3] (Citations and punctuation omitted; emphasis in original.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[4] Tony Benefield is not related to Coty Benefield.

few days later, on Friday, July 20, Benefield stopped a car after observing an occupant behaving suspiciously. Stidham and another man, Hobbs, were in the car. Benefield smelled marijuana and questioned both men about it. After they admitted having marijuana in the car, Benefield instructed them to report to the Berrien County Sheriff's Office on the following Monday morning, July 23. The men reported as instructed.

Benefield testified that he interviewed Hobbs first and learned that Coty and Stidham were friends. Benefield reported this information to the Sheriff, who reminded him that Stidham was the Robinsons' grandson. Benefield then interviewed Stidham, who admitted the marijuana offense. Benefield began asking Stidham about whether he and Coty went "riding around" and whether they had gone to the Robinsons' house. Benefield testified that he could not remember exactly what Stidham said, but when he accused Stidham of breaking into his grandparents' house and stealing their safe, Stidham "said yes." Benefield then left the interview room to retrieve a tape recorder. When he returned, Stidham invoked his right to counsel, and Benefield terminated the interview. Benefield called the public defender, who advised Stidham not to answer any more questions.

Benefield next testified that Stidham's father, David Eugene Stidham ("David"), arrived and asked for the Sheriff. The Sheriff met with Stidham and his father for a "couple of hours." According to Benefield, when the Sheriff emerged, he exclaimed that he had something "real big" — "five counties right here," and instructed Benefield to arrest Coty. When Coty was arrested, he gave a statement to Benefield revealing the details of every case in all five counties. Coty implicated Stidham in the Pulaski County burglaries. Benefield testified that, based on his interview with Stidham and his knowledge of the safe in Houston County, he had enough information to obtain the warrant for Coty's arrest before Stidham confessed to the Sheriff. On cross-examination, Benefield testified that until Stidham and Hobbs reported to his office, he had "no way of placing Coty Benefield in Berrien County."

The Pulaski County burglary victims were Arthur Burns and Wanda English, and they testified at trial that their safes were stolen from their homes in the spring of 2007. Jerry Jones[5] investigated both burglaries. During July, a suspect in a different matter identified Rose, Stidham's co-defendant, as someone who might have information about a person named "Coty" who was "possibly" responsible for the Burns burglary. Another individual informed

---

[5] At the time of trial, Jones was a special agent with the Georgia Bureau of Investigation.

Jones that "Coty" had admitted breaking into a home in Hawkinsville, where Mrs. English lived. This individual indicated that Rose knew Coty. A third person gave Jones a statement to the effect that Coty had discussed entering Burns's home. On July 11, Jones spoke to Rose, who said he knew Coty's first name but not his last name. Rose stated that Coty attended a local college, and Jones was able to obtain his correct full name through checking the school's attendance records. However, Jones testified that he was unable to locate Coty until contacted on July 25 by the Houston County Sheriff's Office. Jones went to Berrien County to interview Coty, who was in custody, and Stidham. Both men signed *Miranda* waivers. Coty gave a statement implicating Stidham and Rose. Stidham gave a statement implicating himself and his co-defendants in the Pulaski County burglaries. Based on the information, Jones obtained a warrant for Rose's arrest. Jones testified that he had not developed the case to the point of making any arrests for the Pulaski County burglaries until after the case broke in Berrien County.

Coty testified that no one from any law enforcement agency contacted him until after Stidham gave a statement. Coty knew that Stidham had made a statement because after Coty was arrested, Benefield had information that "nobody would know but [Stidham]." Rose testified that he did not give a statement until after Jones informed him that Stidham and Coty had confessed.

David Stidham testified on his son's behalf with respect to the suppression issues. According to David, he explained to the Sheriff that Stidham would not provide any specific information absent a guarantee that he would not be charged for any offenses other than the burglary of his grandparents' home in Berrien County.[6] The Sheriff left the room and, when he returned, stated that he had spoken with the district attorney as well as with the authorities in the various jurisdictions and that they all agreed that Stidham had "full immunity," except for the one offense. The Sheriff repeated the information on the telephone to an attorney selected by David. Stidham was in the room at the time these calls were made.

After giving his statement, Stidham was permitted to leave with his father. The next day, they both went back to the Sheriff's office, and Stidham gave investigators from Tifton directions to the locations of three safes. The Sheriff told David and Stidham not to worry, that the investigators were "just helping me clear up a few points."

Stidham testified on the suppression issues as well. According to Stidham, he expected to be arrested on a marijuana charge when he reported to Benefield on July 23. After discussing that offense,

---

[6] David had previously been an informant for the Sheriff.

Benefield asked Stidham whether he knew Coty, and Stidham said that they went to school together. When Benefield began asking about whether Stidham had been to his grandparents' house, he testified that he said yes, and that "as I was saying yes, he was asking about the breaking in and I didn't answer that. I was answering to the other one, about [whether] I'd been there." Stidham did not correct the misimpression because Benefield left the room to retrieve a tape recorder. Benefield had testified on cross-examination that Stidham did not seem confused and that Benefield believed that Stidham had confessed to going to his grandparents' house with Coty and stealing a safe. Stidham testified that while waiting for the public defender to arrive, he thought "about the mistake" he had made while speaking with Benefield.

Stidham also testified that the Sheriff promised him immunity from all prosecutions except for the one offense in Berrien County. According to Stidham, the Sheriff stated that he had spoken with the district attorney and "she'd signed off on it and all the other law enforcement agencies in these other counties had signed off on it." After hearing these assurances, Stidham relayed "every detail that I could think of." The next day, Stidham returned, and the Sheriff said that all his information was working out, reassured him that his deal remained in place, and asked him to clear up some things. Stidham spoke to detectives from Tifton and told them where stolen property was hidden in and around Coty's house. Stidham testified that he subsequently signed a *Miranda* waiver for Jones because Jones did not promise him anything. No one other than the Sheriff had made any promises, and the Sheriff kept reassuring him that the deal was in place.

Based upon this evidence, the trial court granted the motion to suppress in part and denied it in part. The court did not enter a written order but ruled from the bench. The court noted that Stidham's and his father's testimony concerning the promises made by the Sheriff in exchange for Stidham's confession was not challenged by the state. Thus, the court found that the confession was induced by hope of benefit and, therefore, involuntary.[7] The court also determined that Stidham's subsequent statement to Jones, the Pulaski County investigator, was involuntary. But the court went on to say that, prior to Stidham's involuntary confession, the names of his co-defendants were already known to the investigating authori-

---

[7] See OCGA § 24-3-50: "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." See also *Foster v. State*, 283 Ga. 484, 488 (2) (660 SE2d 521) (2008) (promise not to press charges related to weapon impermissibly provided hope of receiving no punishment for that offense).

ties. Further, in Benefield's interview with Stidham on the marijuana offense,

> the connection appeared to be made and confirmed by [Stidham] prior to any statement made to the Sheriff. I understand the testimony by Mr. Stidham was that he thought he was answering one question regarding the marijuana and the investigator's contention is that he was asking him about the burglary at . . . his grandmother's house. I find in favor of the [investigator's] version.

Based on this finding, the court concluded that "good faith, investigative efforts" were made before the involuntary statement that connected Stidham and his co-defendants to the burglaries. The court denied the motion to suppress Coty's statement to Jones, which implicated Stidham, finding that Jones's investigation was independent and that it inevitably centered on Coty. The court also denied the motion to suppress the testimony of Stidham's co-defendants.

Stidham argues that the trial court should have excluded the testimony of his co-defendants as "fruit of the poisonous tree." It is true that evidence obtained as a direct result of an illegal confession is subject to exclusion as "fruit of the poisonous tree."[8]

> The core rationale for extending the exclusionary rule to "fruit of the poisonous tree" is that the admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.[9]

"At the same time, the prosecution is not to be put in a *worse* position simply because of some earlier police error or misconduct."[10] Based on this rationale, not all evidence must be excluded as poisoned fruit "simply because it would not have come to light but for the illegal actions of the police. The more apt question is whether the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the

---

[8] See *Vergara v. State*, 283 Ga. 175, 184-185 (2) (657 SE2d 863) (2008) (statement obtained in violation of defendant's right to counsel, as well as physical evidence derived therefrom, should have been suppressed, as fruit of the poisonous tree).

[9] (Citation and punctuation omitted.) *Teal v. State*, 282 Ga. 319, 323 (2) (647 SE2d 15) (2007).

[10] (Citation and punctuation omitted; emphasis in original.) *Vergara*, supra at 184 (2).

primary taint."[11]

Whether, in the words of our Supreme Court, the means were "sufficiently distinguishable" seems to be a judgment call, but that judgment call is deemed a matter of law so that the policy reason behind the "fruit of the poisonous tree" rule can be implemented. But the legal question is not how this Court would make the judgment call. The legal question is whether there is any evidence to support the judgment call made by the trial court.

In the case at bar, the evidence was almost entirely testimonial. The judgment call thus depends largely on the trial court's evaluation of the witnesses' credibility and the weight to be assigned to their varying testimony. The trial court entered no written order. But its failure to suppress the testimony of Stidham's co-defendants was impliedly a finding that the means used by the police to identify them and obtain their testimony was "sufficiently distinguishable to be purged of the primary taint."[12] In view of the multiple investigations which were ongoing contemporaneously in the several counties, we cannot say that there was no evidence to support the trial court's decision. Accordingly, we affirm the trial court's denial of Stidham's motion to suppress the testimony of his co-defendants.

2. Stidham contends that the evidence is insufficient to support his conviction. His contention, however, presupposes that the testimony of his co-defendants should have been excluded. As we have held that the testimony in question was properly admitted, this enumeration of error fails. Both Coty and Rose implicated Stidham in the Pulaski County burglaries. These accomplices corroborated each other's testimony, and their testimony was additionally corroborated by that of the victims.[13] The evidence was sufficient to enable any rational trier of fact to find Stidham guilty of two counts of burglary beyond a reasonable doubt.[14]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

## DECIDED AUGUST 26, 2009.

*Steven M. Harrison*, for appellant.

---

[11] (Citation and punctuation omitted.) Id., citing *Wong Sun v. United States*, 371 U. S. 471, 487-488 (III) (83 SC 407, 9 LE2d 441) (1963). Accord *Teal*, supra.

[12] (Citation omitted.) *Teal*, supra.

[13] See *Guyton v. State*, 281 Ga. 789, 791 (1) (642 SE2d 67) (2007) ("defendant may be convicted on testimony of accomplice even though the only corroboration of the testimony is the testimony of another accomplice") (citation omitted).

[14] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Timothy G. Vaughn, District Attorney, Jason O. Waters, Assistant District Attorney*, for appellee.