**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 25, 2024

# In the Court of Appeals of Georgia

A24A0420. THE STATE v. MCELROY.

PIPKIN, Judge.

The State appeals from the grant of Joseph McElroy's pre-trial motion to suppress.[1] For the reasons that follow, we reverse in part, vacate in part, and remand with direction.

1. In reviewing the trial court's grant of the motion to suppress, "we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review." (Citation and punctuation omitted.)

---

[1] McElroy is charged with aggravated child molestation, aggravated sodomy, incest, enticing a child for indecent purposes, and two counts of sexual exploitation of children.

*State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009). The record here shows that, on June 20, 2021, law enforcement officers "received a call from parole regarding an incident that occurred at []McElroy's parents' house," where McElroy resided. Upon their arrival, the lead detective spoke with A. M., McElroy's 11-year-old nephew. A. M. stated that, around 4 o'clock that morning, McElroy entered the room where A. M. was sleeping and told the child that McElroy "had a way to make him a lot of money." After this, McElroy led A. M. into another bedroom and performed oral sex on the child while recording the incident with an iPhone.

At some point thereafter, the lead detective called another officer (hereinafter "the swearing officer") asking for assistance in obtaining a warrant to seize and search McElroy's cell phone. While the lead detective remained on the scene, the swearing officer applied for a search warrant. In an affidavit supporting the warrant application, the swearing officer included information that had been relayed to him, including the minor child's outcry and the fact that the alleged act was recorded by McElroy on his cell phone. The swearing officer requested to seize McElroy's iPhone and search the phone for "[d]ata contained within [the iPhone] to include images, video, and log/data files pertaining to [the] creation and storage of images and video," noting

that "devices such as the Apple iPhones are capable of creating and storing both digital images and video recordings." The swearing officer further stated that, "[i]n addition to the actual images and video[,] Affiant knows other files of interest related to the creation and storage of video and images may exist in the form of cache files, database entries, and other log type files created during normal operation of the Apple iPhone." Finally, the application noted that the cell phone was "used in the commission of the crime(s) herein described," was "contraband, the possession of which is unlawful," and was "tangible evidence of the commission of the crime(s) set forth above."

The swearing officer also provided oral testimony to the magistrate judge in support of the warrant application.[2] The officer's testimony was recorded, and the recording was tendered as an exhibit at the suppression hearing; the recording shows that the magistrate judge, after reviewing the warrant application, asked the swearing officer for more information regarding the requested search. The swearing officer informed the judge that the alleged criminal act was filmed that morning at

---

[2] See *Simpson v. State*, 159 Ga. App. 235, 236 (1) (283 SE2d 91) (1981) ("A magistrate may consider oral testimony as well as the affidavit in issuing [a] warrant.").

approximately 4 o'clock on McElroy's iPhone, and, further, that he was seeking the warrant "to retrieve the phone and therefore the data on it - the video - present on the device." The swearing officer also testified that McElroy's mother had identified the specific cell phone that belonged to McElroy. After hearing this testimony, the magistrate judge determined that probable cause existed, signed the search warrant, and authorized the seizure and search of McElroy's iPhone.

McElroy challenged the validity of the search and seizure of his cell phone in a pretrial motion to suppress. At a hearing on the motion, the State called the two law enforcement officers involved in obtaining the warrant for the phone and the subsequent search of the same. Regarding the seizure of the phone, the lead detective testified that he did not seize the phone until he had the warrant, and he denied threatening anyone in order to obtain the cell phone. The swearing officer testified that he conducted the forensic search of McElroy's cell phone. He explained that he delivered the signed warrant to the McElroy residence, after which he collected the cell phone and returned to the lab at the sheriff's office where he searched the phone for the relevant video. McElroy's mother, Pamela Ramsey, testified at the hearing that

the lead detective threatened to "destroy [her] home" if she did not hand over McElroy's phone, and that she turned over the cell phone because she was scared.

The trial court implicitly credited Ramsey's testimony and granted the motion to suppress, finding, in relevant part, that "law enforcement seized [McElroy's] cell phone without a warrant, valid consent, or any exception to the warrant requirement." The trial court further determined that the search warrant "failed to limit the authorities' search of [McElroy's] private property to the date and time of the alleged crime," authorizing a general search of McElroy's phone. On appeal, the State contends that this was error, arguing that the search warrant did not authorize a general search. The State also argues, in part, that the evidence from the seizure and search of McElroy's phone should not have been excluded pursuant to the independent source and inevitable discovery doctrines. We address these arguments in turn.

2. The State contends that the trial court erred by determining that the search warrant at issue authorized an impermissible general search. We agree. As recently explained by the Georgia Supreme Court,

> [t]he Fourth Amendment to the United States Constitution requires that a search warrant particularly describe the article or articles sought. In

addition to requiring that officers have enough guidance to locate and seize only those items the warrant authorizes them to seize, this particularity requirement also prevents general searches—that general, exploratory rummaging in a person's belongings by the government that has been rejected since the founding as a violation of fundamental rights. The particularity requirement is applied with a practical margin of flexibility, depending on the type of property to be seized, and a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit. The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.

(Citations and punctuation omitted.) *State v. Wilson*, 315 Ga. 613, 614-615 (884 SE2d 298) (2023). McElroy argues that the trial court properly concluded that the warrant authorized a general search because the swearing officer failed to "limit[] his request for the search . . . to the specific date and time of the alleged video recording . . . or at least limit[] the search temporally." McElroy's assertion, however, is belied by the record. As discussed above, in addition to providing an affidavit in support of the search warrant application, the swearing officer also provided oral testimony. And, in that testimony, the swearing officer informed the magistrate judge that the alleged criminal act was filmed on June 20, 2021, at approximately 4 o'clock in the morning on McElroy's iPhone and, further, that he was requesting the warrant in order "to retrieve the phone and therefore the data on it - *the video* - present on the device." In

6

other words, the search warrant affidavit and accompanying oral testimony sufficiently limited the scope of the search of McElroy's cell phone to the specific object of the search - i.e., the video as well as the date and time the video was taken. See *Pugh v. State*, 2024 Ga. LEXIS 80, *36 (Case No. S23A1063, decided Mar. 14, 2024) (Pinson, J., concurring) ("In short, under *Wilson*, a search warrant for a cell phone must identify with sufficient particularity both the cell phone that may be searched and the object of that search. Anything less will not hold up against a Fourth Amendment challenge."). Accordingly, we conclude that the trial court erred when it determined that the search warrant authorized a general search, and we reverse this portion of the trial court's order.

3. Next, the State contends, among other things,[3] that even if the seizure of the phone violated the Fourth Amendment, the evidence is still admissible at trial because it meets both the inevitable discovery and independent source doctrines. See *Teal v. State*, 282 Ga. 319, 323-325 (2) (647 SE2d 15) (2007) (discussing the difference

---

[3] The State also argues that law enforcement properly seized the cell phone in order to prevent the destruction of evidence. There is no evidence in the record before us, however, that there was any risk of the cell phone evidence being destroyed or deleted prior to the officers' ability to obtain a warrant. Indeed, the record shows that McElroy was not at home when his phone was seized by officers. Accordingly, this argument fails.

between the independent source doctrine and the doctrine of inevitable discovery). The trial court did not make any fact findings or credibility determinations on these issues, and we cannot review these claims without the same. Accordingly, we vacate the portion of the trial court's order excluding the evidence and remand with direction for the trial court to ascertain whether this evidence is subject to either of these exceptions.[4]

*Judgment reversed in part, vacated in part, and remanded with direction. Barnes, P. J., and Gobeil, J., concur.*

---

[4] On remand, the trial court may, in its discretion, take any necessary and appropriate measures to resolve fact questions pertinent to the inevitable discovery and independent source doctrines, including receiving additional testimony and briefing.