S07A0124. TEAL v. THE STATE.
(647 SE2d 15)

BENHAM, Justice.

Appellant Steven Zane Teal was convicted of the 2002 malice murder of Lou Ann Shatto and the theft of her motor vehicle. On appeal he contends the trial court erred when it did not limit the number of photographs of the victim admitted into evidence and when it denied his motions to suppress and his motion in limine. He also maintains he was not afforded his right to effective representation of counsel at trial.[1]

---

[1] The victim's body was found on November 27, 2002, and appellant was arrested December 2, 2002. On September 19, 2003, the Hall County grand jury returned a true bill of indictment charging appellant with malice murder, three counts of felony murder (aggravated

The body of Lou Ann Shatto was discovered about 10:30 p.m. on November 27, 2002, lying face-down on the floor of a motel room in Oakwood, Georgia, that she had occupied with appellant for six weeks. Her wrists were tied together behind her back and her wrists were tied to her legs by means of a dog choker chain, a dog lead, and a belt. On the bed was an axe handle with bloodstains that proved to be a DNA match with a sample of the victim's blood. There were blood spatters on the room's walls and television, and a pool of blood on the carpet underneath the victim. The forensic pathologist who performed the autopsy testified the woman had died as a result of multiple blunt force head injuries with cranial cerebral trauma. Material found under the victim's fingernails was subjected to DNA analysis and determined to match DNA samples taken from appellant as well as the victim. The emergency medical technician who responded to the scene testified the body was in rigor mortis, leading him to believe she had been dead for several hours.

Neither appellant nor the victim's pickup truck was at the motel where the victim was found. A friend of appellant testified appellant drove the victim's pickup truck to the witness's house just after midnight November 27-28 and the front of his shirt was wet. Appellant left the pickup truck parked behind the friend's house and borrowed the friend's truck. When appellant did not return, the friend reported his truck as stolen. The victim's truck abandoned by appellant contained on an interior panel a transfer bloodstain which DNA analysis matched to that of the victim. Another friend of appellant testified appellant came to her home during this time period seeking her help because he had purportedly wrecked his truck. Without her permission, appellant took the second friend's car, and the first friend's truck was found .25 miles from the second friend's home. A week later, appellant called the second friend and asked if the police were looking for him. During this time, appellant

assault, aggravated battery, false imprisonment being the underlying felonies), aggravated assault, two counts of aggravated battery, false imprisonment, and theft by taking. Appellant's trial commenced on June 21, 2005, and concluded with the jury's return of guilty verdicts on all counts on June 27, 2005. Appellant was sentenced on June 28, 2005, to life imprisonment for the malice murder conviction and a consecutive ten-year sentence for the theft by taking conviction, and the remaining convictions were either vacated by operation of law or found to have merged as a matter of fact into the malice murder conviction. Appellant timely filed a motion for new trial on July 20, 2005, and the trial court held a hearing on all grounds of the motion save ineffective assistance of counsel on June 14, 2006, and a hearing on the claim of ineffective assistance on September 5, 2006. The trial court denied the motion for new trial in an order filed June 30, 2006, and appellant filed a timely notice of appeal on July 21, 2006. On September 12, 2006, the trial court issued an order denying appellant's motion for new trial based on ineffective assistance of counsel. The trial court issued a consent order whereby the parties agreed that the notice of appeal filed on July 21 applied to the September 12 order and was deemed timely for both orders. The appeal was docketed in this Court on September 21, 2006, and oral argument was heard on January 23, 2007.

and another friend spent the night at an apartment shared by two women, one of whom testified appellant's face was scratched and his finger injured. The woman testified appellant said he and the victim had taken drugs, he had lost consciousness, awakened to find the victim dead, and "he didn't mean to do it."

Appellant was arrested on December 2, 2002, when he was found in the crawl space underneath the mobile home occupied by a former girlfriend who had called police when appellant had returned to her home that morning. The former girlfriend testified appellant told her the victim had bitten his finger in an argument. As appellant was being transported to the local jail by a deputy sheriff, he told the deputy he had messed up this time and wondered how long a sentence he would receive. Due to the injury to appellant's finger, he was taken for medical treatment where, in response to an inquiry from the treating physician whether the bite was from an animal or a human, appellant told him his ex-girlfriend had bitten him on November 27 or November 28.

The manager of a motel in Indiana where appellant and the victim lived for several weeks in mid-2002 testified appellant and the victim had an "unstable" relationship in which they frequently yelled and screamed at each other. The witness recalled an incident in August 2002 where the victim had called for help and the witness saw that appellant had the victim pinned against a wall, with one hand around her throat and the other hand in her pockets. When appellant released the victim, she ran into their motel room and locked the door, and appellant broke a window of the motel room and broke the back window of the victim's pickup truck. Appellant's former girlfriend testified that appellant and the victim spent four or five nights with her in Georgia in October 2002, during which time the ex-girlfriend called police to report that appellant was choking the victim while he had her pinned against a car.

1. The evidence was sufficient to authorize a rational trier of fact to conclude appellant was guilty beyond a reasonable doubt of the malice murder of the victim and the theft of her pickup truck. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant filed a motion to suppress evidence obtained in and derived from a warrantless search of the motel room in which appellant and the victim had been living for six weeks and in which the victim's body was found. After conducting a hearing, the trial court denied the motion, concluding the evidence inevitably would have been discovered since the process of obtaining a search warrant had begun at the time the GBI agent had entered the motel room and the search warrant that issued while the agent was in the room was based on information obtained from sources unconnected with the warrantless search of the room. See *Taylor v. State*, 274 Ga. 269, 275

(553 SE2d 598) (2001). Appellant contends the trial court erred in its application of the holding in *Taylor*.

The application for a search warrant for the room was completed at 6:45 a.m., and the warrant was issued by a magistrate at 6:45 a.m. Prior to its issuance, two police officers were dispatched to the motel at about 10:30 p.m. after receipt of a call reporting a bound, motionless body visible through the window of a motel room. Through the motel window, the officers observed the bound victim lying on the floor and "lots of blood" on clothing, furniture, the television, walls, and the floor, and they gained entry to the room with the aid of the motel manager. Once in the room, one officer checked the rest of the room for the presence of additional victims and/or the perpetrator and the other officer held one of the dogs found in the room with the victim while a paramedic attended the victim. When the paramedic confirmed the victim was dead, the trio left the room. Both officers and the paramedic testified at trial to their observations of the room and the victim.

A GBI investigator entered the room at 2:00 a.m. to collect forensic evidence. He visually examined the position of the victim's body and took swabbings of blood from a wooden axe handle and the interior door knob of the door to the room. He testified at trial to his observations, and the swabbings were admitted into evidence. The swabbings were submitted to the GBI Crime Lab for DNA analysis, and the expert analyst testified to the results. The victim's body was removed from the room at 4:15 a.m., and nail clippings were taken from the body later that day by the forensic pathologist conducting the autopsy in Decatur, Georgia. The forensic pathologist testified about the results of the autopsy, and the nail clippings were introduced into evidence. The nail clippings were submitted to the GBI Crime Lab for DNA analysis, and the expert DNA analyst testified to the results. The GBI crime scene investigator concluded his examination of the motel room after 7:30 a.m.

A motel guest is entitled to the Fourth Amendment's protections against unreasonable searches and seizures, and an otherwise unlawful search of a motel room cannot rest upon the consent of motel management. *Stoner v. California*, 376 U. S. 483, 489-490 (84 SC 889, 11 LE2d 856) (1964). See also *Shue v. State*, 129 Ga. App. 757 (1) (201 SE2d 174) (1973). A warrantless search of a site protected against unreasonable searches and seizures is not constitutionally permissible simply because a homicide recently occurred there, as there is no "murder scene exception" to the warrant requirement. *Mincey v. Arizona*, 437 U. S. 385, 395 (98 SC 2408, 57 LE2d 290) (1978). The Fourth Amendment proscribes all unreasonable searches and seizures, and searches conducted without prior judicial approval are per se unreasonable under the Fourth Amendment, subject to specifically

established and well-delineated exceptions. Id. at 390. The need to protect or preserve life or avoid serious injury serves as such an exception, so the Fourth Amendment does not bar officers from making warrantless entries into and searches of protected areas when they have an objectively reasonable basis for believing a person within is in need of immediate aid (*Brigham City, Utah v. Stuart*, 547 U. S. 398 (126 SC 1943, 1947-1948, 164 LE2d 650) (2006)) or, at the scene of a homicide, to search the area for the presence of other victims or the killer. *Mincey v. Arizona*, supra, 437 U. S. at 392-393. Thus, the testimony of the officers who initially responded to the scene concerning their observations upon entering the room was admissible.

The exclusionary rule prohibits introduction into evidence of tangible material seized during an unlawful search, testimony concerning knowledge acquired during an unlawful search, and both tangible and testimonial derivative evidence that is the product of the primary evidence or that is otherwise acquired as an indirect result of the unlawful search, up to the point where the taint is dissipated by its attenuated connection with the unlawful search. *Murray v. United States*, 487 U. S. 533, 536-537 (108 SC 2529, 101 LE2d 472) (1988) (plurality opinion). The core rationale for extending the exclusionary rule to "fruit of the poisonous tree" is that the "admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. . . . On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired." *Nix v. Williams*, 467 U. S. 431, 442-443 (104 SC 2501, 81 LE2d 377) (1984).

However, when examining the admissibility of evidence that is "fruit of the poisonous tree," the appropriate question is whether the evidence at issue "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. [Cit.]" *Wong Sun v. United States*, 371 U. S. 471, 488 (83 SC 407, 9 LE2d 441) (1963). Using this rationale, two functionally similar exceptions to the exclusionary rule — the independent source doctrine and the ultimate or inevitable discovery doctrine — have developed because "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position than they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, supra, 467 U. S. at 443. The independent source doctrine allows admission of evidence that was discovered by means wholly independent of any constitutional violation, while the ultimate or inevitable discovery doctrine allows admission of evidence that was discovered as a result of police error or misconduct if the State establishes by a preponderance of the

evidence that the information ultimately or inevitably would have been discovered by lawful means, without reference to the police error or misconduct. Id. at 443-444. "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment. . . ." Id. at 445, n. 5. Thus, under both exceptions to the exclusionary rule, exclusion of the evidence puts the police in a worse position than they would have been absent any error or misconduct because the evidence was or would have been obtained without police error or misconduct. Id. at 443-444.[2]

There is, however, a "crucial difference" between the two doctrines:

> When properly applied, the "independent source" exception allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means. . . . The "inevitable discovery" exception . . . differs in one key respect . . . : specifically, the evidence sought to be introduced at trial has not actually been obtained from an independent source, but rather would have been discovered as a matter of course if independent investigations were allowed to proceed.

*Nix v. Williams*, supra, 467 U. S. at 459 (Brennan and Marshall, JJ., dissenting).

> The reaction of the commentators to the "inevitable discovery" rule has been mixed. On the one hand, . . . the "inevitable discovery" test, "if properly administered, serves well the *raison d'etre* of the exclusionary rule by denying to the government the use of evidence 'come at by the exploitation of illegality' and at the same time minimizes the opportunity for the defendant to receive an undeserved and socially undesirable bonanza." [Cit.] Others object that it is "based on conjecture" [cit.] and "can only encourage police shortcuts whenever evidence may be more readily obtained by illegal rather than legal means," [cit.] and thus "collides with the fundamental purpose of the exclusionary rule." [Cit.]

6 LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 11.4 (a), pp. 268-269 (4th ed. 2004). Professor LaFave points out

---

[2] The purpose of the inevitable discovery rule — "to block setting aside convictions that would have been obtained without police misconduct" — is closely related to the harmless-constitutional-error rule of *Chapman v. California*, 386 U. S. 18, 22 (87 SC 824, 17 LE2d 705) (1967). *Nix v. Williams*, supra, 467 U. S. at 444, n. 4.

that "the 'inevitable discovery' rule simply is inapplicable in those situations where its use would, as a practical matter, operate to nullify important Fourth Amendment safeguards." Id. at pp. 271-272.

Because the evidence at issue (the crime scene swabbing of the axe handle,[3] the nail clippings, and the DNA analyses thereof) was discovered or was derived from evidence discovered during a warrantless search under circumstances that do not fall within an exception to the Fourth Amendment's warrant requirement, the admission of the evidence hinges upon whether it qualifies as evidence that would inevitably have been discovered. In the absence of a determination by the U. S. Supreme Court of what actually constitutes an "inevitable" discovery, the U. S. Court of Appeals for the Eleventh Circuit maintained its two-pronged pre-*Nix* concept of inevitable discovery: "there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct." *United States v. Terzado-Madruga*, 897 F2d 1099, 1114 (11th Cir. 1990). This Court expressly adopted that standard as its own in *Taylor v. State*, supra, 274 Ga. at 275. This standard has been designated as "the active pursuit rule" and is a judicial effort to prevent application of the inevitable discovery doctrine from emasculating the search warrant requirement of the Fourth Amendment. Golden, *The Inevitable Discovery Doctrine Today: The Demands of the Fourth Amendment, Nix, and Murray, and the Disagreement Among the Federal Circuits*, 13 B.Y.U. J. Pub. L. 97, 119 (1998). See also *Davis v. State*, 262 Ga. 578, 584 (4) (422 SE2d 546) (1992) ("[W]e cannot allow the exceptions [to the exclusionary rule] to render meaningless the warrant requirements of the Fourth Amendment. . . .").

There is no issue in the case before us concerning whether the evidence would have been discovered by lawful means. The application for the search warrant for the motel room was based in part on information which preceded the GBI investigator's entry into the room: the responding officers' observations through the room's window of the motionless body of the victim and the bloody room, and during their legal entry to render aid and conduct a protective sweep;

---

[3] The return of the executed search warrant lists as one of the items seized pursuant to the search warrant from the motel room "1 wooden cotton swab containing suspected blood from door handle." Since that piece of evidence was not seized during the warrantless search but was seized pursuant to a valid search warrant based upon information wholly independent of the illegal entry, it is subject to the "independent source" doctrine and meets the criteria for admissibility thereunder. *Murray v. United States*, supra, 487 U. S. at 542.

and information from witnesses identifying the victim and appellants as the occupants of the room search. The affidavit did not rely on any evidence collected by the GBI investigator.

Appellant contends the trial court erred in admitting the evidence because the police did not possess the "lawful means," i.e., the search warrant, before the illegal warrantless search of the motel room and the seizure of evidence therefrom. Our focus, therefore, is on whether the prosecution demonstrated that the "lawful means" which made the discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal search and seizure.

While this Court's decisions construing the "inevitable discovery" doctrine have not affirmatively discussed what constitutes "legal means," the decisions do suggest that an investigation which took place prior to the police error or illegal conduct and which resulted in information that would be the basis for issuance of a search warrant can serve as the " 'lawful means which made the discovery inevitable . . . [that] were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct.' " *Taylor v. State*, supra, 274 Ga. at 275 (there was "an absence of demonstrated historical facts that the police *were moving inevitably to the discovery* of the gun" absent the illegal conduct) (emphasis supplied); *Davis v. State*, supra, 262 Ga. at 583-584 (since the State did not show that a warrant would have been sought based on *the information police had* prior to the officer's illegal entry, inevitable discovery not applicable). See also *Norton v. State*, 283 Ga. App. 790 (3) (643 SE2d 278) (2007) (inevitable discovery doctrine inapplicable due to State's failure to show that officers had available to them lawful means *of investigation* that were being actively pursued prior to the illegal conduct).[4]

In the case before us, the information summarized above contained in the affidavit in support of the application for the search warrant for the motel room had been gathered prior to the illegal entry of the GBI crime scene investigator into the room. We conclude that the State established that the evidence in question would have been discovered by lawful means, and the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct, since

---

[4] Appellant's reliance on the discussion of the doctrine of inevitable discovery in *State v. Rocco*, 255 Ga. App. 565, 566 (566 SE2d 365) (2002), is misplaced since that discussion is dicta, the appellate court having determined that the search of a home after a warrant had issued but prior to it being in the physical possession of the searching officers was not an illegal search. Furthermore, while we adopted the Eleventh Circuit's two-pronged standard for determining what constitutes inevitable discovery, we are not bound to follow that court's judicial construction of the term "lawful means . . . possessed by police and . . . being actively pursued prior to the occurrence of the illegal conduct."

the investigation that took place prior to the police error or illegal conduct resulted in information that served as the basis for issuance of a search warrant. Accordingly, we conclude the trial court did not err when it admitted the evidence.

3. At trial, a physician who treated appellant after his arrest for an injury to his finger testified that, when he asked appellant whether the injury had been inflicted by an animal or a human being, appellant told him appellant's girlfriend had inflicted the bite wound. Citing OCGA § 24-3-4,[5] appellant unsuccessfully sought to exclude the testimony of the physician repeating what appellant had told him, and contends on appeal that the trial court erred in allowing the testimony. Pretermitting the applicability of OCGA § 24-3-4 to these facts, the physician's testimony was admissible under OCGA § 24-3-34, the trial court's alternate basis for admission of the testimony. "[A] defendant's incriminating statement is admissible when it constitutes an admission against the defendant's penal interest [cits.] . . . because a *defendant's* declaration against penal interest is the admission of a party-opponent." *Stanford v. State*, 272 Ga. 267, 270 (4) (528 SE2d 246) (2000). See also Milich, Georgia Rules of Evidence, § 18.3 (2nd ed.); Rumsey, Agnor's Georgia Evidence, § 11-13 (3d ed.). The trial court did not err when it declined to exclude the testimony.

4. The day after the victim's body was discovered, the Oakwood Police Department found the victim's unlocked pickup truck with the keys in it at the home of Merritt, a friend of appellant. Merritt testified appellant had arrived in the truck the night before, had borrowed Merritt's vehicle, and had not returned. The police impounded the truck, taped it closed, and had it towed to a fenced area behind the police department's offices, where it was stored while the police applied for and received a search warrant for the vehicle. Appellant asserts the trial court erred in failing to suppress the results of the search of the truck that was conducted pursuant to a search warrant because the police seized the vehicle prior to having a search warrant.

> Impoundment is valid "only if there is some necessity for the police to take charge of the property." [Cit.] "The ultimate test for the validity of the police's conduct in impounding a vehicle is whether, under the circumstances then confronting the police, their conduct was reasonable within the

---

[5] OCGA § 24-3-4 states, "Statements made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence."

meaning of the Fourth Amendment." [Cit.] The determinative inquiry, therefore, is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary.

*Carlisle v. State*, 278 Ga. App. 528, 529-530 (629 SE2d 512) (2006). See also *Mooney v. State*, 243 Ga. 373, 375-377 (254 SE2d 337) (1979), abrogated on other grounds, *Horton v. California*, 496 U. S. 128 (110 SC 2301, 110 LE2d 112) (1990). While the truck was not impeding a public roadway, its owner was a murder victim, the most recent user was the prime suspect in the crime and had not yet been apprehended and, as the truck was not secure since it was unlocked with the keys inside, the trial court did not err in concluding it was reasonable for the police to impound the car in order to prevent tampering. *Wright v. State*, 276 Ga. 454 (5) (579 SE2d 214) (2003).

5. The trial court did not err when it overruled appellant's efforts to limit the number of photographs of the victim admitted into evidence. Seven photos depicted the victim at the scene of the crime, and fifteen pre-autopsy photos depicted the nature and extent of the victim's injuries. Crime scene and pre-autopsy photos of the victim which do not depict alterations to the victim's body were properly admitted. *Buttram v. State*, 280 Ga. 595 (9) (631 SE2d 642) (2006); *Sterling v. State*, 267 Ga. 209 (10) (477 SE2d 807) (1996) (photos of the victim at the crime scene were relevant to show the location and condition of the body when found, and pre-autopsy photos depicting wounds were relevant).

6. The trial court did not err when it refused to suppress evidence found in a duffel bag recovered the day appellant was arrested by a Forsyth County deputy sheriff who, in responding to a call to investigate the presence of a suspicious person, found the bag sitting in grass near the driveway after appellant had fled from the premises. The deputy sheriff took possession of the bag after a police dog sniffed it for appellant's scent and gave an alert for the presence of drug-related material. The bag contained several articles of clothing, including a pair of jeans that appeared to be bloodstained.

Inasmuch as, for purposes of Fourth Amendment analysis, appellant abandoned the bag when he fled from the deputy sheriff, the trial court did not err when it denied appellant's motion to suppress.

The question of abandonment for Fourth Amendment purposes does not turn on strict property concepts but on whether the accused has relinquished his interest in the property to the extent that he no longer has a reasonable expectation of privacy . . . at the time of the search.

*Bloodworth v. State,* 233 Ga. 589, 590 (2) (212 SE2d 774) (1975). See also *Burgeson v. State,* 267 Ga. 102 (3) (b) (475 SE2d 580) (1996) (defendant who fled from stolen car and her personal belongings during police chase abandoned the articles for purposes of the Fourth Amendment).

7. Lastly, appellant contends he was denied his right to the effective assistance of counsel at trial. Appellant raised the issue of ineffective assistance in his motion for new trial and, at the hearing on the motion on June 14, the trial court announced that issues other than ineffective assistance of counsel would be addressed at the June 14 hearing and the claim of ineffective assistance would be heard at a hearing to be held at a later date. On June 29, 2006, before the second hearing was held, the trial court denied the motion for new trial, and appellant filed a timely notice of appeal from that denial on July 21. After the notice of appeal was filed but prior to the appeal being docketed in this Court, the trial court held the hearing on the claim of ineffective assistance and issued a second order denying the motion for new trial on September 12. The trial court issued a consent order in which all parties agreed that the July 21 notice of appeal applied to both the June 29 and the September 12 orders denying the motion for new trial.

"A notice of appeal divests the trial court of jurisdiction to alter a judgment while appeal of that judgment is pending." *Peterson v. State,* 274 Ga. 165, 171 (6) (549 SE2d 387) (2001). The filing of the notice of appeal on July 21 divested the trial court of jurisdiction to entertain appellant's claim of ineffective assistance of counsel, and the order entered by the trial court denying the motion for new trial after finding there was no ineffective assistance of counsel is a nullity. Id. Consequently, there is nothing for this Court to review.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 25, 2007 —
RECONSIDERATION DENIED JULY 26, 2007.

*David Burroughs,* for appellant.
*Lee Darragh, District Attorney, Alison W. Toller, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.