## S10G1897. WILDER v. THE STATE.

(717 SE2d 457)

HUNSTEIN, Chief Justice.

Appellant James Glenn Wilder was convicted on two counts each of child molestation and sexual exploitation of a child and one count each of aggravated child molestation and statutory rape based on sexual acts committed on several occasions with a 15-year-old girl. He was sentenced as a recidivist to life imprisonment without the possibility of parole, plus a second consecutive life term and a total of 60 additional years consecutive. On appeal, Wilder challenged, inter alia, the trial court's denial of his motion to suppress incriminating evidence found in a locked briefcase owned by Wilder that was seized from a third party's premises without a warrant and subsequently searched pursuant to a valid warrant. In affirming Wilder's conviction, the Court of Appeals held that the motion to suppress had been properly denied pursuant to the "independent source" exception to the exclusionary rule. *Wilder v. State*, 304 Ga. App. 891 (1) (698 SE2d 374) (2010).[1] We granted certiorari to determine whether the Court of Appeals properly applied the independent source doctrine. We now hold that the independent source doctrine does not apply in the circumstances presented, and we therefore reverse and remand to the Court of Appeals for further proceedings.

The evidence adduced at the suppression hearing established as follows:

[A]n investigating officer received information from the victim and another woman, April Quick, that Wilder had a briefcase containing videotapes of the victim and Wilder engaging in sex acts, and that the briefcase was at the home of Wilder's friend, Judy Malin. Malin testified that Wilder had been at her home with the victim on one occasion and that, on another occasion, Wilder left a locked briefcase at her home and told her he would "pick it back up later." Malin stated further the briefcase was at her home for several months before she was contacted by the officer who asked that she turn it over to him. She [testified] that she was reluctant, confused, and frightened, but that she "felt like [she] was cooperating with whatever needed to be done" and that she wanted the briefcase "out of my house."

---

[1] While affirming the conviction, the Court of Appeals did find error in the imposition of a recidivist sentence and thus vacated appellant's sentence and remanded the case for resentencing. *Wilder* at 896 (6).

The officer requested that Quick retrieve the briefcase from Malin's home and bring it to him. Quick testified that when she gave him the briefcase, the officer gave her $20 "for my gas because I had no gas." Once the officer had possession of the briefcase, he obtained a search warrant to search its contents. Inside the briefcase officers found DVDs containing explicit images of the victim, videotapes containing images of Wilder and the victim engaging in sexual intercourse, and copies of portions of the Georgia Code (downloaded while the victim was 15 years old) defining sodomy, statutory rape, and child molestation with the text "under the age of 16 years" highlighted.

(Footnote omitted.) *Wilder*, supra, 304 Ga. App. at 892 (1). Regarding the briefcase, the evidence further reflected that Wilder had contacted Malin at some point after leaving it at her home, specifically requested that Malin not give it to anyone, and promised to retrieve it at a later date.

Based on these facts, the trial court denied Wilder's motion to suppress on the ground that Malin had validly consented to the seizure of the briefcase; alternatively, the court held that the evidence was admissible under the independent source doctrine, which authorizes admission of evidence initially discovered through improper means if it was ultimately "obtained . . . by a means untainted by and unrelated to the initial illegality." (Footnote omitted.) *State v. Lejeune*, 277 Ga. 749, 754 (3) (A) (594 SE2d 637) (2004). See also *Teal v. State*, 282 Ga. 319 (2) (647 SE2d 15) (2007).

On review, the Court of Appeals held that Wilder had a reasonable expectation of privacy in his locked briefcase, which was not abridged by virtue of having left it at Malin's home. *Wilder v. State*, supra, 304 Ga. App. at 892-893 (1). Consequently, the Court of Appeals held that "the briefcase retained its constitutional protection" and undertook to determine "whether the search of the briefcase [met] the requirements of the Fourth Amendment." Id. at 893 (1). Without addressing the trial court's finding that Malin's consent was sufficient to authorize seizure of the briefcase, the Court of Appeals held the evidence to be admissible under the independent source doctrine. In the Court of Appeals' words,

[b]ecause the contents of the briefcase were seized pursuant to a valid search warrant based upon information wholly independent from law enforcement's illegal use of Malin and Quick to obtain the briefcase, [the evidence] meets the criteria for admissibility under the independent source doctrine. [Cits.]

Id. at 893 (1).

1. Before examining the merits of the Fourth Amendment issue, we ·first address the argument that Wilder lacks standing to challenge the seizure of his briefcase because it was obtained from the home of a third party. Stated simply, "the . . . assertion that [Wilder] is without standing to object to the seizure of his personal belongings is plainly wrong. [Cit.]" *Mooney v. State*, 243 Ga. 373, 374-375 (1) (254 SE2d 337) (1979) (appellant had standing to challenge seizure of his luggage from third party's automobile), abrogated on other grounds by *Horton v. California*, 496 U. S. 128 (110 SC 2301, 110 LE2d 112) (1990). Though lacking standing to challenge a *search* of *Malin's* premises, see, e.g., *Brown v. State*, 240 Ga. App. 321, 322 (1), n. 2 (523 SE2d 333) (1999) (search of premises owned by third party does not implicate defendant's Fourth Amendment rights), appellant does have standing to contest the *seizure of his own* personal property from the premises of another. *Mooney v. State*, supra at 374-375. Compare *English v. State*, 288 Ga. App. 436 (3) (654 SE2d 150) (2007) (no standing to challenge search of third party's premises and seizure of stolen vehicle stored there by defendant).

2. Turning to the merits of the Fourth Amendment issue, on review of a trial court's ruling on a motion to suppress, "the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review. [Cit.]" *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011). As the foregoing recitation of facts reflects, there was but a single search of Wilder's briefcase, and this search was conducted only after issuance of a search warrant, the validity of which is not at issue. Wilder's contentions thus center on the warrantless seizure of the briefcase prior to issuance of the search warrant.[2]

> [The Fourth Amendment] protects two types of expecta-
> tions, one involving "searches," the other "seizures." A
> "search" occurs when an expectation of privacy that society
> is prepared to consider reasonable is infringed. A "seizure"
> of property occurs when there is some meaningful interfer-

---

[2] It appears uncontested that the taking of the briefcase, though actually performed by a private citizen, constituted an act of the State to which the Fourth Amendment's proscriptions would apply. See *Wilder v. State*, supra, 304 Ga. App. at 893 (1). See also 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 1.8 (b) (4th ed.) (as to searches and seizures by private individuals, "it may generally be said that the search is still governmental action if it was instigated by the authorities or the authorities have participated in the search in some way").

ence with an individual's possessory interests in that property.

(Footnotes omitted.) *United States v. Jacobsen*, 466 U. S. 109, 113 (I) (104 SC 1652, 80 LE2d 85) (1984). Wilder's contention is that, because the subsequent search was made possible only by the initial warrantless seizure, and because the warrantless seizure was unlawful, the evidence obtained in the search should have been suppressed under the exclusionary rule as "fruits" of the illegal seizure.

The independent source doctrine " 'allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means. . . .' [Cit.]" *Teal v. State*, supra, 282 Ga. at 324 (2). This doctrine typically operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search. See, e.g., *Reaves v. State*, 284 Ga. 181 (2) (c) (664 SE2d 211) (2008) (initial warrantless search did not render evidence inadmissible because same evidence discovered after search warrant issued based on evidence gained independently of initial search); *Lejeune v. State*, supra, 277 Ga. at 755 (3) (A) (unlawful searches yielding certain evidence did not preclude admission of same evidence uncovered during subsequent searches pursuant to warrants obtained independently of initial searches); *Price v. State*, 270 Ga. 619 (2) (513 SE2d 483) (1999) (even if initial search was unlawful, same evidence discovered in course of lawful consent search was admissible). See also *Murray v. United States*, 487 U. S. 533, 538-539 (II) (108 SC 2529, 101 LE2d 472) (1988) (" '(i)n the classic independent source situation, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source' ").

This case presents a different scenario, in that it involves a single search, preceded only by an unlawful seizure,[3] which yielded custody of the item ultimately searched rather than information giving rise to the eventual lawful search. Here, while the *information* on which the search warrant was based derived from a source wholly independent of the initial unlawful seizure, the *search itself* cannot be said to have been conducted independent of the seizure, as it was the seizure that in fact made possible the search that actually occurred. Accordingly, we simply cannot find that the evidence here was "discovered by means wholly independent of any constitutional violation." *Teal*, supra, 282 Ga. at 323 (2). The Court of Appeals thus

---

[3] As noted in Division 3, infra, whether the seizure was actually unlawful remains an open question; for purposes of analyzing the applicability of the independent source doctrine, we simply assume that it was.

erred in affirming the trial court in its application of the independent source doctrine.

3. In addition to the independent source doctrine, the trial court utilized an alternative rationale for denying the motion to suppress, finding that Malin had given consent for the seizure of the briefcase and thus finding that the seizure was not unlawful in the first instance. See *United States v. Matlock*, 415 U. S. 164, 171 (II) (94 SC 988, 39 LE2d 242) (1974) (third party consent may validate warrantless search where third party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected"); *Brown v. State*, 288 Ga. 404 (2) (703 SE2d 624) (2010) (applying third party consent doctrine); *Fears v. State*, 152 Ga. App. 817, 818 (1) (264 SE2d 284) (1979) (applying third party consent doctrine). The Court of Appeals did not address the merits of this issue; the issue has thus not been argued on certiorari; and we decline now to resolve it sua sponte, given our uncertainty over the applicability of the third party consent doctrine where, as here, there is evidence that the third party assumed the role of bailee[4] with respect to property seized without a warrant. See 4 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 8.6 (a) (4th ed.) (analyzing various cases with different outcomes, depending on their facts, regarding bailee's authority to consent to search and/or seizure of bailor's personal property). Similarly, we decline now to decide whether the circumstances would warrant application of the "inevitable discovery" doctrine, a close relative of the independent source doctrine. See *Teal*, supra, 282 Ga. at 324 (2) (inevitable discovery doctrine permits admission of evidence which, though not actually obtained from an independent source, " 'would have been discovered as a matter of course if independent investigations were allowed to proceed' "). These issues are best left to be addressed on remand, with the benefit of additional briefing and argument as necessary.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED NOVEMBER 7, 2011.

*Michael O. Horgan*, for appellant.

---

[4] Neither the trial court nor the Court of Appeals made any explicit findings regarding the existence of a bailment. However, given the undisputed evidence that Wilder left the briefcase with Malin for safekeeping and that Malin kept the briefcase at his request, it appears that a bailment was created. See *Bohannon v. State*, 251 Ga. App. 771, 772 (1) (555 SE2d 112) (2001) ("[a] bailment involves either an express or implied mutual agreement to safe keep property between the owner and its custodian either gratuitously or for some consideration").

*Dennis C. Sanders, District Attorney, Kevin R. Majeska, Durwood R. Davis, Assistant District Attorneys*, for appellee.