**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 7, 2015**

# In the Court of Appeals of Georgia

A15A0762. THE STATE v. EDWARDS et al.

ANDREWS, Presiding Judge.

Leonard Adrian Edwards and Ashley McMillain were jointly indicted on charges of trafficking in marijuana by possession of more than ten pounds of marijuana.[1] Edwards filed a pre-trial motion to suppress evidence obtained from his residence as a result of: (1) an initial entry by police officers into the residence without a search warrant; and (2) a subsequent re-entry and search of the residence by the officers pursuant to a search warrant. McMillain, who also resided at the residence, adopted and joined in the motion to suppress. After a hearing on the

---

[1] In the indictment, Edwards and McMillain were also jointly charged with possession of a controlled substance (N-Benzylpiperazine) with intent to distribute, and Edwards was charged with possession of a firearm during the commission of a felony and theft by receiving stolen property.

motion, the trial court entered an order granting the motion to suppress.[2] Pursuant to OCGA § 5-7-1 (a) (4), the State brings this pre-trial appeal claiming that the trial court erred by granting the motion to suppress evidence found by officers in the residence pursuant to the search warrant. For the following reasons, we affirm the suppression order in part and reverse in part.

On review of a trial court's ruling on a motion to suppress, "the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." *Barrett v. State*, 289 Ga. 197, 200 (709 SE2d 816) (2011).

At the hearing on the motion to suppress, police officers gave the following testimony: On the basis of information provided in an anonymous phone call, Cobb County narcotics officers approached the residence occupied by Edwards and McMillain to conduct a so-called "knock and talk," for the purpose of investigating

---

[2] The indictment shows that Stephen Arbin Stewart was also jointly charged, along with Edwards and McMillain, with trafficking in marijuana. Although Stewart also adopted Edwards's motion to suppress with respect to evidence obtained by search of the residence, the State contends that Stewart did not own or reside at the residence, and that he lacks standing to challenge a search of the residence. See *Wilder v. State*, 290 Ga. 13, 15 (717 SE2d 457) (2011). In any event, the trial court's order on the motion to suppress shows that the court considered only the challenges raised by Edwards and McMillain.

suspicions of illegal drug activity at the residence. The State does not dispute that, when the officers initially knocked on the door of the residence, they had no probable cause for issuance of a warrant to enter and search the residence, nor did they have probable cause and exigent circumstances necessary to justify an immediate entry and search of the residence. A man (later identified as Edwards) opened the door of the residence in response to the officers' knock, and the officers (who were uniformed and identified themselves as police officers) immediately smelled the strong odor of raw marijuana coming from inside the residence. One of the narcotics officers who smelled the marijuana recognized the odor of marijuana because he was trained to detect the odor, and because he had experienced the smell of marijuana in hundreds of cases handled during his career. As the officers stood at the open door and explained to Edwards why they were there, Edwards moved back and to the side, going behind the open door. Acting for their own safety, the officers stepped into the residence, just inside the door, and grabbed and secured Edwards. Officers found a pistol and $7,000.00 in cash on Edwards's person. Once inside the door, one of the officers could see from that position what appeared to be a large amount of raw marijuana a few feet away in clear plastic bags "pretty much everywhere in the kitchen." Within seconds after entering the residence to secure Edwards, the officers

3

heard heavy footsteps of someone running upstairs in the residence in the direction of the stairs that led from the first to the second floor. The officers, who were near the bottom of the stairs, went up the stairs to investigate the potential threat. When they reached the top of the stairs, officers saw a man (later identified as Stewart) run through a room and jump out the second floor window of the residence. At that point, the officers left the residence, secured the door, and waited outside while one of the officers applied for a warrant to search the residence.

As a basis for the search warrant, the officer provided an affidavit to a magistrate court judge setting forth facts supporting the claim that there was probable cause to believe that criminal activity – possession of a large quantity of marijuana – was occurring inside the residence. Aside from the anonymous phone call, the only facts set forth in the application for the warrant were that officers went to the door of the residence to conduct a "knock and talk" investigation, and that, when the occupant of the residence opened the door in response to the knock, one of the officers, who was trained to recognize the odor of marijuana, "smelled the strong odor of green marijuana coming from the residence." On that basis, the judge granted the search warrant, and about 45 minutes after the initial entry into the residence, the officers re-entered the residence and conducted a search pursuant to the warrant.

4

During this search, police found about ten pounds of marijuana in the kitchen (the same marijuana officers saw during the prior entry to secure Edwards), additional marijuana in the living room and upstairs, and other narcotics in the kitchen area.

In its order granting the motion to suppress, the trial court first considered the testimony from police officers that they initially entered the residence without a warrant out of concern for their own safety in response to Edwards's movements at the open door. To protect against unnecessary intrusions into a private residence, the Fourth Amendment imposes a warrant requirement on police who seek to enter the residence for purposes of search or arrest. *Welsh v. Wisconsin*, 466 U. S. 740, 748 (104 SCt 2091, 80 LE2d 732) (1984). Although the Fourth Amendment did not prohibit the officers from approaching the residence and conducting the "knock and talk" investigation at the door (*State v. Able*, 321 Ga. App. 632, 635 (742 SE2d 149) (2013)), to justify the nonconsensual, warrantless intrusion into the residence, there must have existed probable cause for an arrest or search inside the residence, and a showing of exigent circumstances. *Threatt v. State*, 240 Ga. App. 592, 595 (524 SE2d 276) (1999). In the present case, the trial court found a lack of exigent circumstances by concluding that testimony from the officers that they entered the residence out of concern for their own safety was not credible. Accordingly, the trial court ruled that

"law enforcement [officers] were not lawfully inside the house prior to issuance of any search warrant," and excluded testimony or other evidence obtained as a result of the illegal entry. But the trial court also found that the Fourth Amendment did not prohibit admission of evidence that, prior to the illegal entry, an officer lawfully present at the door of the residence recognized the odor of marijuana coming from inside the residence. The State does not contest the trial court's ruling that the officers' initial warrantless entry violated the Fourth Amendment.

The trial court then considered the validity of the search warrant. In considering this issue, the trial court found that the officers were lawfully at the front door of the residence pursuant to the "knock and talk" investigation, that Edwards opened the door in response to their knock, and that, when he opened the door, the officers smelled the odor of marijuana coming from inside the residence. Nevertheless, the trial court found that the anonymous phone call provided no basis for probable cause to issue the search warrant, and that "the smell detection of marijuana by law enforcement . . . is insufficient alone to sustain a finding of probable cause for the issuance of a search warrant" of the residence. Based on these findings, the trial court concluded the search warrant was invalid because the facts set forth in the affidavit seeking the warrant were insufficient to establish probable

6

cause; ruled the search without a valid warrant violated the Fourth Amendment; and granted the motion to suppress evidence obtained by officers pursuant to the search warrant.

The State claims that the trial court erred by ruling, as a matter of law, that the smell of marijuana alone cannot constitute probable cause to issue a warrant to search the residence. In *State v. Kazmierczak*, Case No. A14A2046, ___ Ga. App. ___, 2015 WL 1432195 (March 30, 2015), we held that "[i]f the affidavit for the search warrant contains sufficient information for a magistrate to determine that the officer who detected the odor of marijuana emanating from a specified location is qualified to recognize the odor, the presence of such an odor may be the sole basis for the issuance of a search warrant." Id. at *5. *Kazmierczak* overruled contrary authority and recognized that the presence of an odor coming from a particular place may be "'evidence of the most persuasive character'" in support of probable cause to issue a search warrant. Id. at *5 (quoting *Johnson v. United States*, 333 U. S. 10, 13 (68 SCt 367, 92 LE 436) (1948)). Accordingly, a police officer qualified by training or experience to recognize the distinctive odor of raw marijuana may reasonably infer from the officer's detection of that odor coming from a particular place that marijuana will be found in that place. *Kazmierczak*, supra at *5.

7

Under this standard, the affidavit in support of the search warrant in the present case was sufficient to support the magistrate's determination that probable cause existed for issuance of the warrant. It follows that the trial court erred by granting the motion to suppress evidence obtained pursuant to the search warrant on the basis that the warrant was invalid for lack of probable cause. The portion of the trial court's order suppressing evidence obtained pursuant to the search warrant is reversed. The portion of the trial court's order which the State did not contest – the suppression of evidence obtained as a result of the officers' initial entry into the residence without a warrant – is affirmed.[3]

*Judgment affirmed in part and reversed in part. Miller and Branch, JJ., concur.*

---

[3] The trial court did not directly address an issue arguably raised by the motion to suppress – whether evidence obtained pursuant to the search warrant: (a) was tainted by the initial illegal entry and should be suppressed as the "fruit of the poisonous tree," or (b) was obtained by means independent of the illegal entry and was purged of the primary taint. See *State v. Colvard*, 296 Ga. 381, 384, n. 6 (768 SE2d 473) (2015); *Teal v. State*, 282 Ga. 319, 323-324 (647 SE2d 15) (2007). Although the issue was not directly addressed, we note that the trial court expressly ruled that the sole evidence which established probable cause for the search warrant – the officer's smell of raw marijuana – was obtained by means which did not violate the Fourth Amendment.