**FIFTH DIVISION
MERCIER, C. J.,
BARNES, P. J., and MCFADDEN, P. J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 27, 2024**

# In the Court of Appeals of Georgia

A24A0256. THE STATE v. HANKS.

MCFADDEN, Presiding Judge.

The state appeals from an order granting a motion to suppress. To decide this appeal, we must apply a controlling decision handed down earlier this month by our Supreme Court, *Tatum v. State*, ____ Ga. ____ (____ SE2d ____) (Case No. S23G0955, decided June 11, 2024).

*Tatum* expressly adopts a two-part test for administration of the independent source doctrine. That doctrine "operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search." *Wilder v. State*, 290 Ga. 13, 16 (2) (717 SE2d 457) (2011). But the independent source doctrine does

not apply if the second search was performed in reliance on a warrant and the decision to seek that warrant "was prompted by information obtained during a prior unlawful search or if information obtained during that unlawful search was presented to the [m]agistrate and affected his decision to issue the warrant." *Tatum,* supra at ____ (2) (a) (punctuation omitted), citing *Murray v. United States*, 487 U. S. 533, 542 (III) (108 SC 2529, 101 LE2d 472) (1988).

Under the two-part test enunciated in *Tatum*, a trial court must first determine whether, "after excising information regarding unlawfully obtained evidence from the warrant affidavit, the remaining evidence is sufficient to support a finding of probable cause[.]" *Tatum*, supra at ____ (2) (a) (citations and punctuation omitted). Second, a trial court "must determine whether the officer's decision to obtain a search warrant was prompted by what he observed during the illegal entry." Id. (citation and punctuation omitted).

The evidence at issue in the case before us today was seized from a hotel room by law enforcement officers pursuant to a search warrant that was obtained after an investigator, responding to an anonymous tip about illegal drugs in the room, smelled

marijuana and conducted a warrantless dog sniff immediately in front of the hotel room door, which the trial court found to be within the protected curtilage of the room. We agree with the state that the investigator was authorized to approach and knock on the door, so the trial court erred in finding that the officer was unlawfully standing outside the door when she smelled marijuana. The state does not defend the warrantless dog sniff. Instead, the state argues that even assuming it was unlawful, there was still sufficient evidence providing probable cause to support the search warrant. That is to say, the state relies on the independent source doctrine.

But this argument addresses only the first part of the two-part test for determining the applicability of the independent source doctrine as now expressly adopted by our Supreme Court in *Tatum*. And the trial court, lacking the guidance of *Tatum*, failed to make any findings or conclusions as to either of the two parts of the independent source doctrine test. Although we can resolve the first part of the test based on the record before us, we cannot resolve the second part of the test. So we must vacate the trial court's order and remand the case with direction that the court make such a determination in the first instance.

1. *Facts and procedural posture*

Ellonzo Hanks was indicted on charges of trafficking in ecstasy, trafficking in methamphetamine, possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of promethazine/codeine. Hanks filed a motion to suppress evidence seized from his hotel room, claiming that the search of the room pursuant to a warrant was illegal. After an evidentiary hearing, the trial court granted the motion to suppress.

The trial court's order set forth the following statement of facts as supported by the testimony of a police investigator at the suppression hearing.

> On February 27, 2019, the Sandy Springs Police Department received an anonymous tip regarding drugs in a hotel room at the Extended Stay America located at 1050 Hammond Drive NE, Sandy Springs, Fulton County. The tip was prompted by a report from housekeeping staff for the hotel, who claimed that they were cleaning Defendant's room when they either saw or smelled marijuana. The next day, [the investigator] and a K9 unit went to the Extended Stay and knocked on the door of Defendant's room. [The investigator] stated that she could smell marijuana coming from inside Defendant's room. After receiving no answer from inside the room, [a K9 officer] deployed his police service dog . . . to conduct an open air sniff. [The dog] then gave a positive alert at the bottom of Defendant's door. Based upon [the investigator's] affidavit as to the foregoing facts, a search warrant was obtained and executed that same day at approximately 2:30 p. m. The search returned the following results from Defendant's room: marijuana, crack cocaine, cocaine, methamphetamine, MDMA, promethazine, and $1,067[.]

Based on those facts, the trial court concluded that Hanks had a reasonable expectation of privacy in the curtilage immediately outside his hotel room door; that the investigator had smelled marijuana and then deployed the K9 unit within this protected curtilage; and that all evidence recovered from the hotel room was therefore "the product of an unreasonable search of the protected curtilage and must be suppressed."

The state filed a motion for reconsideration, which the trial court denied. This appeal followed.

2. *Knock and talk*

The state first asserts that the trial court erred in ruling that the investigator was improperly standing outside the hotel room door when she smelled marijuana. We agree.

It is undisputed that the investigator went to the hotel and knocked on Hanks' door in response to an anonymous tip about illegal drugs being present in the room. Contrary to the trial court's ruling, in responding to the tip, the investigator was authorized to approach and knock on the outer door of the room. See *State v. Edwards,*

332 Ga. App. 342, 344-345 (772 SE2d 430) (2015) (Fourth Amendment does not prohibit officers from approaching a residence and conducting a "knock and talk" investigation at the door); *State v. Able*, 321 Ga. App. 632, 635 (742 SE2d 149) (2013) ("knocking on the outer door of a residence for the purpose of investigating a reported crime is not violative of the Fourth Amendment . . . even when the information is provided by an anonymous tipster") Indeed, Hanks concedes in his appellate brief that the investigator "was authorized to stand in that curtilage and knock on the door." See *Pickens v. State*, 225 Ga. App. 792, 793 (1) (a) (484 SE2d 731) (1997) (officer responding to anonymous tip about illegal drugs in a motel room "was permitted to knock on [defendant's] door . . . in order to investigate the report of a crime") (citation and punctuation omitted). Thus, the trial court's conclusion that investigator was impermissibly outside the hotel room door when she smelled marijuana was erroneous.

3. *Tatum v. State*

The state does not contend that the trial court erred in finding that the warrantless dog sniff immediately outside of Hanks' hotel room door was unlawful. Rather, the state argues that even assuming the dog sniff was improper, the

6

investigator's detection of the smell of marijuana coming from the room while lawfully standing outside the room provided sufficient probable cause to support the magistrate's issuance of the search warrant. As discussed below, this argument addresses the first factor to be considered under the independent source doctrine. But as recently explained by our Supreme Court in *Tatum*, courts must also consider a second factor — whether the investigator's decision to seek a search warrant was prompted by information gained from the purportedly unlawful dog sniff. Here, the trial court did not consider either factor.

Like the instant case, in which the investigator included the warrantless dog sniff information in her affidavit to obtain the search warrant, *Tatum* also involved the use of information obtained from a warrantless search in an officer's affidavit for a search warrant. *Tatum*, supra at ____. In that case, our Supreme Court explained that the independent source doctrine is an exception to the exclusionary rule, whereby evidence obtained in violation of the Fourth Amendment may nevertheless remain admissible. *Tatum*, supra at ____ (2) (a).

> As the [United States] Supreme Court explained in *Murray*, the independent source doctrine applies to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained

> independently from activities untainted by the initial illegality. In *Murray*, the United States Supreme Court held that the independent source doctrine does not apply if the decision to seek the warrant "was prompted" by information obtained during a prior unlawful search or if information obtained during that unlawful search "was presented to the [m]agistrate and affected his decision to issue the warrant."

*Tatum*, supra at ____ (2) (a) (citations and punctuation omitted).

The Georgia Supreme Court then took note of recent Eleventh Circuit Court of Appeals opinions using a two-part test to determine the applicability of the independent source doctrine.

> The first part of the test requires courts to excise from the search warrant affidavit any information gained during the alleged illegal entry and determine whether the remaining information supports a finding of probable cause. This part of the test addresses the Supreme Court's direction in *Murray* regarding whether unlawfully obtained evidence was presented to the [m]agistrate and affected his decision to issue the warrant. If, after excising information regarding unlawfully obtained evidence from the warrant affidavit, the remaining evidence is sufficient to support a finding of probable cause, courts reach the second part of the test, in which they must determine whether the officer's decision to obtain a search warrant was prompted by what he observed during the illegal entry. When applying the second part of this test, the Eleventh Circuit asks whether the officer would have sought the warrant even if he had not engaged in the prior unlawful search.

*Tatum*, supra at ____ (2) (a) (citations and punctuation omitted).

8

The Georgia Supreme Court acknowledged that, unlike the Eleventh Circuit, it had never expressly stated that this second part of this test was required under the independent source doctrine. *Tatum*, supra at ____ (2) (a). The court then went on to adopt this second part of the test, holding that "[w]hen applying the independent source doctrine, we are bound to follow *Murray* and therefore must consider whether the [s]tate's decision to seek a warrant for evidence previously obtained through unlawful means was prompted by the prior unlawful search." *Tatum*, supra at ____ (2) (a). Our Supreme Court further explained:

> if the [s]tate would have sought the warrant even without the prior illegality, then its decision was not prompted by the prior unlawful search. But if the [s]tate would not have sought the warrant but for its prior unlawful activities, then the warrant was so prompted, and the evidence is not admissible under the independent source doctrine. This is a mixed question of fact and law. As the Supreme Court reasoned in *Murray*, the purpose of the independent source doctrine is to put the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred. By the same token, the police should not be in a better position because of their misconduct. The rule from *Murray* serves both of these aims: if the second, lawful search was not prompted by the prior unlawful search, then the independent source doctrine applies, and the [s]tate is in the same position it would have been in if the unlawful conduct had not occurred. But if the second search was prompted by the original unlawful search, then the evidence must be excluded so that the [s]tate does not benefit from its unlawful conduct. Under such circumstances, the independent source doctrine should not and cannot apply.

*Tatum*, supra at ____ (2) (a) (citations, punctuation, and footnotes omitted).

The Georgia Supreme Court also noted that "[n]othing we have said here obviates the need for courts to consider whether, after excising any unlawfully obtained information from the warrant affidavit, information sufficient to support a finding of probable cause remains." *Tatum*, supra at ____ (2) (a), n. 9. This is the same consideration set forth in the first part of the Eleventh Circuit two-part test recited above.

4. *Independent source doctrine*

We now apply the two-part test to determine the applicability of the independent source doctrine to the instant case. While we can resolve the first part of the test based on the record before us, which includes the search warrant affidavit, we cannot resolve the second part of the test from the record. So the trial court's order must be vacated and the case remanded for the trial court to consider that issue in the first instance.

(a) *Excising unlawful information*

As noted above, the state asserts that even if the purportedly unlawful dog sniff information is excised from the investigator's search warrant affidavit, there is still sufficient information supporting probable cause. We agree. The first part of the test is satisfied.

As discussed above, while the investigator was properly standing by the door, she smelled the odor of marijuana coming from Hanks' room. We note that Hanks claims that the trial court implicitly found that the investigator did not smell marijuana. But that claim is belied by the trial court's express finding that *"the evidence shows that [the investigator] smelled marijuana* and deployed the K9 unit immediately at or immediately in front of the hotel room door[.]" (Emphasis supplied). We must accept this finding since it was supported by the investigator's testimony at the suppression hearing that she "smelled the odor of raw marijuana emanating from" the room and that she was trained to identify that smell through years of training and experience. See *State v. Perry*, 349 Ga. App. 475 (825 SE2d 902) (2019) (if the trial court has made an express finding of fact, we must accept it unless it was clearly erroneous).

11

The investigator's detection of the odor of marijuana coming from inside Hanks' room, even without the dog sniff information, provided sufficient probable cause to support the magistrate's issuance of the search warrant. See *Caffee v. State*, 303 Ga. 557, 562 (2) (b) (814 SE2d 386) (2018) ("a police officer has probable cause to search when that officer, through training or experience, detects the smell of marijuana").

> In *State v. Kazmierczak*, 331 Ga. App. 817 (771 SE2d 473) (2015), . . . this [c]ourt recognized that if the affidavit for the search warrant contains sufficient information for a magistrate to determine that the officer who detected the odor of marijuana emanating from a specified location is qualified to recognize the odor, the presence of such an odor may be the *sole* basis for the issuance of a search warrant.

*McMurray v. State*, 355 Ga. App. 420, 424 (1) (844 SE2d 303) (2020) (punctuation omitted, emphasis in original). As further explained in *Kazmierczak*,

> [a] magistrate would still be required to consider all the circumstances set forth in the affidavit, in determining whether probable cause exists to issue a search warrant based on the presence of such an odor. Specifically, the magistrate could consider whether the affidavit establishes that the officer was qualified to recognize the odor based on his or her training and experience, whether the officer was able to determine the particular location where the odor was originating from, and whether the officer detected the odor from a place where he or she was legally entitled to be.

*Kazmierczak*, supra at 822 (citation and punctuation omitted).

The affidavit in this case established that the investigator detected the odor from a place where she was legally entitled to be — standing directly outside the hotel room door to conduct a "knock and talk" in response to the tip about illegal drugs being present in the room. The affidavit also established that the investigator was able to determine the particular location of the odor, stating that she "could smell the distinct odor of raw marijuana emanating from the interior of [Hanks' hotel] room[.]" The affidavit further provided that the investigator was assigned to a special unit focusing primarily on narcotics investigations; that she had assisted in executing search warrants leading to the seizure of illegal drugs, including marijuana; that she had received specialized training that has aided her as the lead investigator in multiple drug investigations and seizures; and that she had assisted in numerous investigations of drug trafficking organizations involving the use of "knock and talks." While the affidavit, unlike the investigator's testimony at the suppression hearing, did not explicitly state that the investigator was trained to detect the odor of marijuana, compare *Edwards*, supra at 343, the information provided in the affidavit was sufficient for the magistrate to conclude "that the officer was qualified to recognize the odor based on . . . her training and experience." *Kazmierczak*, supra. Compare *Wingate v.*

13

*State*, 347 Ga. App. 341, 343-344 (2) (819 SE2d 502) (2018) (affidavits indicating that officers smelled marijuana did not include any information about their training or experience "that would allow a magistrate to determine that [they were] qualified to recognize the odor") (citation and punctuation omitted).

"The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Black*, 370 Ga. App. 18, 22 (1) (893 SE2d 517) (2023) (citation and punctuation omitted). On appeal, we "review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis. The duty of the appellate court[] is to determine if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search warrant." Id. (citation omitted). Moreover, the "magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." Id.

Given the deference owed to the magistrate's decision, we hold that the magistrate had a substantial basis for finding probable cause to issue the search

warrant based solely on the investigator's affidavit establishing that she smelled the odor of marijuana coming from Hanks' hotel room. Indeed, Hanks concedes that the investigator's detection of the odor of marijuana "would support the validity of the warrant and the subsequent search, because even removing the unlawful dog sniff, the remaining plain sniff [of marijuana by the investigator] would be sufficient to uphold the warrant." See *McMurray*, supra at 423 (1) (even omitting consideration of false information included in an affidavit, the remaining information in "the affidavit nonetheless provided probable cause to issue the warrant"). Accordingly, the first part of the test to determine the applicability of the independent source doctrine is satisfied in this case.

(b) *Decision to obtain a search warrant*

As explained above, the second part of the test requires a determination as to whether the investigator's decision to obtain a search warrant was prompted by the purportedly unlawful warrantless dog sniff. But "the record on appeal [is] insufficient [for us] to make this determination. We accordingly vacate the decision of the [trial court] and remand to that court . . . for further proceedings consistent with this opinion." *Tatum*, supra at ____ (2) (b) (citation and punctuation omitted). See also

15

*Murray*, supra at 543-544 (III) (remanding for the trial court to determine, in the first instance, whether search pursuant to a warrant was prompted by prior unlawful search).

*Judgment vacated and case remanded with direction. Mercier, C. J., and Barnes, P. J., concur in judgment only.*